Neff v. Brandeis.

ROSE, J., took no part.

ELIZABETH A. NEFF, APPELLEE, v. EMIL BRANDEIS, AP-
PELLANT.

FILED MARCH 12, 1912. No. 16,584.

1. **Master and Servant:** INJURY TO THIRD PERSON: LIABILITY. To
sustain a recovery for injuries caused by being run down by an
automobile owned by the defendant, the plaintiff must show by
a preponderance of the evidence that the person in charge of
the machine was the defendant's servant, and was, at the time
of the accident, engaged in the master's business or pleasure
with the master's knowledge and direction.

2. **Torts:** NEGLIGENCE: LIABILITY. The defendant agreed with a third
party, for a stated monthly compensation, to take charge of his

automobile, keep it at a garage, wash it, polish it, keep it ready for running at all times, and furnish a chauffeur to the defendant whenever he might desire to use his car. Defendant loaned the car to another, and the keepers of the garage sent it out in charge of their man for the use of the borrower. After such use, and while the chauffeur was returning the car to the garage, he ran into a vehicle driven by the plaintiff and her husband, and injured her. *Held*, That at the time of the accident no such relation of master and servant or of principal and agent existed between the defendant and the chauffeur as would render defendant liable for such injuries.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*Greene, Breckenridge & Matters,* for appellant.

*W. J. Connell* and *Walter P. Thomas, contra.*

BARNES, J.

Action in the district court for Douglas county by Elizabeth A. Neff against Emil Brandeis and Arthur Brandeis to recover damages alleged to have been sustained by the plaintiff as the result of a collision with an automobile of which Emil Brandeis was the owner. There were two trials in the district court. On the first trial the jury were directed to return a verdict in favor of the defendant Arthur Brandeis, and upon the question of the liability of Emil the jury disagreed. On the second trial the plaintiff had the verdict and judgment, and the defendant Emil Brandeis has appealed.

It appears that in April, 1906, Emil Brandeis was the owner of two automobiles, one of which was called the "White Steamer," which was kept for him by the Powell-Bacon Automobile Company of Omaha, Nebraska, under an agreement which was described by Mr. Powell in substance, as follows: I was to wash the machine, polish it, store it, and keep it ready for running at all times. I was to furnish a man any time Mr. Brandeis might call for it. Mr. Brandeis was to pay me so much a month for

storing the machine, washing it, keeping it in good shape, and was also to pay me a stated sum for the man. Mr. Brandeis could call on the man—for that man—any time of day or night, and keep him as long as he wanted him. Mr. Brandeis said that he did not want to have the care of a man, to keep his eye on him all the time, and he would prefer to pay me a certain sum per month, with the understanding that I should keep the man at work, but have him subject to his call. I told Mr. Brandeis that I was perfectly willing to do that; that a man would be at his call and disposal at any time he should telephone or give instructions to have him sent out. The defendant corroborated this statement, and further testified as follows: "Q. Who furnished the chauffeur that drove your cars on April 15, 1906, and prior to that time? A. The Powell-Bacon Automobile Company. Q. Did you have some agreement or arrangement under which the chauffeurs were furnished by them? A. Yes, sir. Q. What was it? State what was said as nearly as you can. A. I kept my automobiles at the Powell-Bacon garage. They looked after them in the way of furnishing oil and gasoline, and repairs and extras, and furnishing chauffeurs whenever I wanted to use the cars. Q. How much did you pay? A. $80 a month.

It appears from the record that on the 15th day of April, 1906, the defendant loaned his automobile to his brother, Mr. Arthur Brandeis; that he did not use or even see his car on that day. Defendant also testified as follows: "Q. Who did use it, if you know? A. My brother. Q. Your brother, which one, A. D.? A. A. D. Q. That is Arthur Brandeis? A. Yes, sir. Q. State whether that car was used at all or out for your personal pleasure or business. A. No, sir. * * * Q. How did your brother Arthur happen to be using this machine on this particular day in question? A. Well, he asked me, I believe it was in the forenoon, whether he could use my car, and I think he said he wanted to go out to his farm; and I said yes, and he telephoned to the Powell-Bacon garage. Q. In other

words, you loaned it to him for that afternoon? A. Yes, sir. Q. You made no use of it yourself, at all? A. No, sir."

With respect to the delivery and return of the machine, Mr. Brandeis further testified: "Why, I had an arrangement at any time I wanted to use either of the cars I would telephone, and they would furnish a man to take me out riding and take the car back to the garage. Q. Who would take the car back? A. The man that ran it— the chauffeur that ran the car. Q. You may state whether or not the driver, Arthur Bell, who drove that car on the afternoon of the day when the collision with Mr. and Mrs. Neff occurred, had to your knowledge ever driven you? A. Why, I did not know Mr. Bell. Q. And had he to your knowledge driven either of your cars before this particular day? A. I would not know that either. Q. State whether or not you had the same chauffeur continuously? A. No, the agreement was that they were to furnish any chauffeur they had there that was at leisure that they could furnish. There was not any particular chauffeur. Q. So you would have sometimes one and sometimes another? A. Yes, sir. * * * Q. You had nothing to do with selecting the particular chauffeur for a particular trip? A. No; I just telephoned them to send the car around." It also appears that the defendant never paid the chauffeur anything, but paid the Powell-Bacon Company for his services, which payment was included in the $80 per month, as above stated.

It further appears that on the afternoon of the 15th day of April, 1906, the Powell-Bacon Company sent the defendant's automobile out in charge of a chauffeur named Arthur Bell, who testified that, acting upon the order of Mr. Powell, he took the car in question to the home of Arthur Brandeis, and waited there for some time; that Mr. Arthur Brandeis and his family came out, got into the car, and he drove them to Arthur's farm; that upon his return he left them at their home, and started to take the car back to the garage; that on his way there he had a

collision with a vehicle driven by the plaintiff and her hus-
band, which caused the injuries of which she complained.

On cross-examination Mr Powell stated: "I cannot give
the exact conversation, but the substance was that I told
Mr. Brandeis that he could have the man any time he saw
fit, and that the man would be subject to his direction
when he left my place.   *   *   *   There was something
said.   I told Mr. Brandeis that he had the direction of the
man, and that he was responsible for the man after he left
my place."   On cross-examination the defendant gave the
following testimony:   "Q. It was your arrangement with
the Powell-Bacon Company that, while he was out in the
service with your automobile, running it for you or your
friends by your authority, he was doing that for you, was
it not?   *   *   *   A. I presume so.   Q. And he would so
continue to run the machine for you and by your authority
until he returned the machine to the garage, was not that
true?   And is not that correct under the arrangements
you had with the Powell-Bacon Company?   A. It would be
if he took the car to the garage after he got through.
*   *   *   Q. Then, after he got back to the garage and had
delivered it, he would then be out of your direction and
no longer subject to it?   Is not that correct?   A. Yes,
Powell might send him out with some other man's car
right away.   Q. When he came back and returned the
machine to the garage then he would no longer be sub-
ject to your control, his connection with you then ceased
for the time being?   A. I suppose so."

The foregoing is the evidence, but not all of it, and
about the facts thus established there seems to be no dis-
pute.   At the close of the evidence the defendant requested
the court to instruct the jury to return a verdict in his
favor.   His motion was overruled, and that ruling is
now assigned as error.   It is strenuously contended by
counsel that upon the evidence contained in this record
there can be no recovery against the defendant.   It ap-
pears from the pleadings and the evidence that this suit
was brought against Emil Brandeis on the theory that

Bell, the chauffeur, was his servant, and it is contended that the facts do not support that theory. It is the well-settled rule that, where one person has sustained an injury from the negligence of another, he must in general proceed against him by whose negligence the injury was occasioned. If, however, the negligence which caused the injury was that of a servant, while engaged in his master's business, the person sustaining the injury may disregard the immediate author of the mischief and hold the master responsible for the damages sustained. The master selects the servant, and the servant is subject to his control, and, in respect to the civil remedy, the act of the servant is, in law, regarded as that of the master. But it. is not enough, in order to establish a liability of one person for the negligence of another, to show that the person whose negligence caused the injury was, at the time, acting under an employment by the person who is sought to be charged. It must be shown, in addition, that the employment created the relation of master and servant between them. *King v. New York C. & H. R. R. Co.*, 66 N. Y. 181. In *Wyllie v. Palmer*, 137 N. Y. 248, it was held that the doctrine of *respondeat superior* applies only when the relation of the master and servant is shown to exist between the wrongdoer and the person sought to be charged, for the result of some neglect or wrong at the time and in respect to the very transaction out of which the injury arose. *Higgins v. Western Union Telegraph Co.*, 156 N. Y. 75; *Doran v. Thomson*, 74 N. J. Law, 445. In *Lotz v. Hanlon*, 217 Pa. St. 339, the court held that, where plaintiff's suit is to recover for injuries received by being run down by an automobile owned by the defendant, he must show not only that the person in charge of the machine was the defendant's servant, but also that he was at. the time engaged on the master's business with the master's knowledge and direction. It was said in the body of the opinion : "But it comes to nothing that the driver was the defendant's servant, if it appears that at the time the accident happened he was not on the master's errand or business."

In *Slater v. Advance Thresher Co.*, 97 Minn., 305, the supreme court of Minnesota said: "The expression 'in the course of his employment' means, in contemplation of law, 'while engaged in the service of the master,' and nothing more. It is not synonymous with 'during the period covered by his employment.'"

Counsel for the plaintiff vigorously assert that the cross-examination of the defendant and the witness Powell established the relation of principal and agent between the defendant and the chauffeur, and was sufficient to sustain the verdict. This seems to have been the theory upon which the trial court submitted the case to the jury. We are of opinion that the testimony of witnesses on their cross-examination, and upon which plaintiff's counsel rely to sustain the judgment, is not sufficient to render the defendant liable for the negligence of the chauffeur. It did not change the terms of the agreement, as stated by the witnesses on their direct examination. It was nothing more than their opinion of the legal effect of that agreement. As such it was entitled to little, if any, consideration. It must be remembered that the evidence clearly shows that the chauffeur, whose negligence caused the injury of which the plaintiff complains, was the hired servant of the Powell-Bacon Company, and not of the defendant; and where, as in the case at bar, the defendant had not used his car for any purpose, but had merely loaned it to another, and had no control over its movements or the conduct of the chauffeur, we are of opinion that the owner of the car would not be liable for the negligence of the servant of another. Again, it would seem clear, from the evidence, that if the chauffeur, in returning the defendant's car to the garage, had by his negligence injured or wrecked it, the Powell-Bacon Company, whose servant he was, would have been liable to the defendant therefor; and it cannot be said that the chauffeur was his agent to such an extent as to make defendant liable to third persons for the chauffeur's negligence while returning the car to the garage.

While the legal questions involved in this case have been often decided, it has been difficult to find an adjudicated case where the facts are the same as those in the case at bar. *Parsons v. Wisner*, 113 N. Y. Supp. 922, is perhaps the nearest in point of any of the cases. There the owner of an automobile loaned it to his brother, and the keeper of a garage furnished the chauffeur to run it. The court, in passing on the liability of the owner, said: "Upon the case presented it is established by a clear preponderance of the evidence that the chauffeur in charge of the machine at the time of the accident was not in the employ of the defendant, and had never been in his employ, and that he was not engaged in the business of the defendant, or under his direction or control, at that time." Upon the facts there stated, and for those reasons, a judgment against the owner of the automobile was reversed. It appears that the rule there announced is approved and supported by Babbitt, Law Applied to Motor Vehicles, sec. 582; Berry, Law of Automobiles, sec. 148; *Cunningham v. Castle*, 127 App. Div. (N. Y.) 580; *Reynolds v. Buck*, 127 Ia. 601. To hold the defendant liable upon the facts of this case, we are required to infer that the chauffeur, whose negligence was the cause of the accident, was at that point of time the servant of the defendant and under his control. We are of opinion that such an inference is too far fetched and is not warranted by the evidence.

For the foregoing reasons, we are unable to sustain the judgment in this case upon either the law of master and servant, or of principal and agent. We are of opinion that the trial court erred in overruling the motion for a directed verdict. The judgment of the district court is therefore reversed and the cause is remanded for further proceedings in harmony with this opinion.

REVERSED.

LETTON, J., concurs in the conclusion.