OUELLETTE, Appellant, vs. SUPERIOR MOTOR & MACHINE WORKS, Respondent.

*May 21—June 17, 1914.*

*Automobiles: Injury to pedestrian: Negligence: Contributory negligence: Questions for jury: Master and servant: When relation exists: Chauffeur furnished by garage keeper: Who liable for his negligence.*

1. In an action for injuries to a person who, while standing in the street waiting for a street car, was struck by an automo-

bile, it appeared that the automobile was running very slowly, that plaintiff was plainly seen by the chauffeur, and that there was plenty of room to pass him; but the evidence being conflicting as to whether plaintiff stood still or, just as the automobile was about to pass him, stepped backward in front of it, the question of the chauffeur's negligence is *held* to have been one for the jury.

2. Upon plaintiff's testimony in such case that he did not hear the automobile horn, that he had been standing where he was but a very few seconds, that he did not move before being struck, that one car which he wished to take had run by him, and that he was intent on signaling another so as not to be delayed, the question of his contributory negligence is *held* to have been for the jury.

3. Where the owner of an automobile stored it at a garage under an agreement by which the garage keeper, for an agreed compensation, was to furnish a chauffeur from time to time as requested to drive the car (it being left to the garage keeper to select the driver and pay him his compensation and to hire and discharge him at pleasure), the relation of master and servant existed between the garage keeper and the driver, and the garage keeper was liable for negligence of the driver while operating the car at a time when the owner was an occupant thereof, if such owner did not assume to direct or control the method or manner of driving, further than to tell the driver where he desired to go.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Reversed.*

On September 4, 1912, while plaintiff was standing at the southwesterly intersection of Tower avenue and North Twelfth street, in the city of Superior, between the curb and the street-car track, waiting to board a south-bound car on Tower avenue, he was run down by an automobile driven by one Knutson, an employee of the defendant, and this action was brought to recover damages for injuries sustained. The complaint alleged that the plaintiff was standing at the place where pedestrians usually and customarily stood preparatory to boarding south-bound street cars,—about four feet from the westerly track and on the west side thereof; that by reason of the negligent and careless driving of the automobile by

the chauffeur plaintiff was struck and injured. The automobile was owned by Reverend Fardy and at the time of the accident he and three other clergymen were riding therein. The automobile was stored at the garage of the defendant and a chauffeur was provided by the defendant whenever requested. Tower avenue was being paved at this time and only the westerly side of the street was open to traffic. The complaint further alleged that the chauffeur at the time of the accident was in the employ of the defendant and was acting within the scope of his employment and in the furtherance of the business of said defendant. The answer denied the material allegations of the complaint and alleged contributory negligence on the part of the plaintiff. At the close of the testimony the court granted the motion of the defendant for a directed verdict in its favor, holding that at the time of the accident the chauffeur was acting as the servant of Reverend Fardy and for the time being was under his control. Judgment was entered accordingly, and from such judgment plaintiff appeals.

For the appellant there was a brief by *Grace, Hudnall & Fridley,* and oral argument by *George B. Hudnall.*

*Solon L. Perrin,* for the respondent.

BARNES, J. The respondent urges that the judgment of the circuit court is correct (1) because the driver of the automobile was not negligent; (2) because the plaintiff was guilty of contributory negligence; and (3) because the relation of master and servant did not exist between the defendant and the driver of the automobile at the time of the accident, at least not to the extent that the rule of *respondeat superior* applies in the case.

1. The evidence offered in behalf of the defendant tended to show that the automobile was running very slowly at the time of the collision; that the plaintiff was observed by the driver and the other occupants of the car; that the horn of

the automobile was sounded; that there was plenty of room for the automobile to pass between the plaintiff and the curb; and that the injury was caused by reason of the plaintiff stepping backwards toward the curb and in front of the automobile just as it was about to pass him. The explanation is plausible and probable.

The plaintiff, however, testified that he was standing near the street-car track for the purpose of signaling an approaching car and that he did not move from the time he took his position there until he was struck by the automobile. There is some other evidence in the case which tends to corroborate this. This evidence raises a jury question. If a jury should find the testimony of the plaintiff to be true, there could be no doubt about the negligence of the driver, because there is abundant evidence to show that plaintiff could be plainly seen and was seen and that there was plenty of room to pass him. Once it is established as a verity in the case that the plaintiff did not move from the position in which he stood, it would be difficult to escape the conclusion that the driver would have been guilty of manslaughter if plaintiff had been killed. The contention that there was no question with reference to the driver's negligence for the jury to pass upon cannot prevail.

2. On the question of contributory negligence the case is somewhat closer. The plaintiff apparently paid no attention to the automobile horn. He says he did not hear it. He was not keeping a lookout for vehicles approaching him from the rear. However, he testifies that he had been standing where he was but a very few seconds; that one street car had run by him which he desired to take, and that he was intent on signaling another so as not to be delayed on his homeward journey, and we think on the whole it was a question for the jury to answer whether or not he exercised under the circumstances that degree of care and prudence which is ordinarily exercised by the great mass of mankind under the same or similar circumstances.

3. On the third proposition relied on by the defendant the court directed a verdict in its favor, and this ruling presents the principal as well as the most interesting question in the case, which is this: Where the owner of an automobile stores it at a garage under an agreement by which the garage keeper, for an agreed compensation, is to furnish a chauffeur from time to time as requested to drive the car (it being left to the garage keeper to select the driver and pay him his compensation and to hire and discharge him at pleasure), is the garage keeper liable for the negligence of the driver while operating the car, the owner being an occupant thereof, but not assuming to direct or control the method or manner of driving, further than to tell the driver where he desires to go?

Had the car and driver been hired from the garage keeper there would be no doubt that the rule of *respondeat superior* would apply. This court has so decided. *Gerretson v. Rambler G. Co.* 149 Wis. 528, 136 N. W. 186; *Hannon v. Van Dycke Co.* 154 Wis. 454, 143 N. W. 150. The law elsewhere is in harmony with these decisions, which really rest on the principle established in numerous cases dealing with the liability of livery-stable keepers. See notes to *Frerker v. Nicholson* (41 Colo. 12, 92 Pac. 224) 13 L. R. A. N. s. 1122, and *Morris v. Tredo* (83 Vt. 44, 74 Atl. 387) 25 L. R. A. N. s. 33; Berry, Automobiles, § 147; also note to *Kellogg v. Charity C. Foundation* (203 N. Y. 191, 96 N. E. 406), cited in 26 Am. & Eng. Ann. Cas. 886; 1 Thomp. Comm. on Neg. § 581; *Meyers v. Tri-State A. Co.* 121 Minn. 68, 140 N. W. 184.

There are also some cases which approach the one under consideration more closely in their facts than do the cases cited. In these cases the occupant of the vehicle owned it, but the horse and driver were furnished by the liveryman. In such cases the latter has been held liable for the negligence of the driver. *Kellogg v. Charity C. Foundation,* 203 N. Y. 191, 96 N. E. 406 (see comprehensive note to this

case in 26 Am. & Eng. Ann. Cas. 883–885); *Quarman v. Burnett,* 6 M. & W. 499; *Jones v. Mayor, etc.* L. R. 14 Q. B. Div. 890; *Parsons v. Wisner,* 113 N. Y. Supp. 922.

The case of *Neff v. Brandeis,* 91 Neb. 11, 135 N. W. 232, 39 L. R. A. N. s. 933, is not distinguishable in principle from the case under consideration. There the defendant owned the car and kept it in a garage under a contract to pay a stipulated sum for storage and for a driver whenever desired. The accident occurred while the chauffeur was taking the car from the defendant's home to the garage. The defendant was not in the car when the accident occurred, but if the chauffeur was the defendant's servant while defendant was riding in the car, surely he was his servant for the purpose of taking the car from the defendant's home to the place where he desired it stored. The court held that the chauffeur was not the owner's servant.

The case of *Dalrymple v. Covey M. C. Co.* 66 Oreg. 533, 135 Pac. 91, 48 L. R. A. N. s. 424, in which the garage owner was held liable, would also seem to be on all-fours with the present one. There the owner of the car was occupying it when the accident occurred and had given directions where to go and when to stop to the chauffeur furnished by the defendant.

The mere fact that Father Fardy was the owner of the automobile does not make him responsible and much less solely responsible for every injury caused by it. *Steffen v. Mc-Naughton,* 142 Wis. 49, 124 N. W. 1016; *Cunningham v. Castle,* 127 App. Div. 580, 111 N. Y. Supp. 1057; *Reynolds v. Buck,* 127 Iowa, 601, 103 N. W. 946; Babbitt, Motor Vehicles, § 582.

The respondent cites a number of cases as holding that, where the general servant of one person is loaned or furnished to another, he thereupon becomes the servant of the one for whom the service is being performed and the latter is liable for his negligence. This is no doubt accurate enough

where the servant is placed under the control of the person for whom the work is being done and the latter assumes to direct the manner of doing the work. Most of the cases cited are of this class. In some of them this distinction is not very closely observed, but we think it forms the true line of demarkation between liability and nonliability. If one arranges with a painter or a carpenter who has several men in his employ to send a man to do a certain piece of work and points out to such person the work which he desires done, but does not undertake to direct, control, or interfere with the manner of doing the work, the relation of master and servant does not arise, and the liability for the negligence of the servant toward a third party would rest on the general employer. *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360, 64 N. W. 1041. On the contrary, if the party for whom the work was being done undertook to direct what should be done and how it should be done, he would thereby make the employee his own servant and become liable for the servant's negligence in following his directions. Where a general employer of labor, in response to calls, assigns his men to do certain jobs, presumably he is making a profit out of their labor by receiving more for it than he pays the laborer. There can be little doubt that such employees are facilitating their master's business while doing the work assigned them. Here the general employer had the right to hire and discharge the employee. The owner of the car made no stipulation that any particular employee should do the work. The plaintiff offered to prove that the garage keeper did not give any authority to the owner to control the chauffeur and that the owner did not assume any control over him except to designate the streets over which he desired to pass. The evidence was ruled out by the court on the ground that it was immaterial. It seems clear that under the principle referred to the relation of master and servant not only existed between the defendant and the chauffeur, but also that the rule of

*respondeat superior* applied, assuming that the proofs of-
fered were forthcoming.   There seems to be more reason to
hold that there is liability in automobile cases than in livery-
stable cases.   Most people either know how to drive a horse
or how one should be driven and can ordinarily tell when a
driver is reckless or incompetent.   Many people own automo-
biles who know nothing about driving them.   It requires
some degree of experience and skill to do the work safely and
properly.   Under such a contract as here existed between
the owner of the car and the defendant, the owner was obliged
to rely on the knowledge and skill of the garage owner to
procure a safe and competent driver.   We are only con-
cerned with the liability of the defendant, and conclude that
it was error to direct a verdict.

*By the Court.*—Judgment reversed, and cause remanded
for a new trial.