SWEETNAM v. SNOW.

AUTOMOBILES—MASTER AND SERVANT—PERSONAL INJURIES—NEGLI-
GENCE—LIABILITY OF GARAGE PROPRIETOR.

Plaintiff was injured by an automobile owned by the defendant but driven by an employee of a local garage owner while defendant was absent from the city. Under a contract between him and the keeper of the garage the latter, for a consideration, had agreed and undertaken to supply a driver to deliver and return the car to the garage as defendant's needs might require. Defendant had no control over the choice of chauffeur, who was paid and controlled by the proprietor of the garage; held, that no action lay in plaintiff's favor against the automobile owner and that the relationship of master and servant did not exist between the driver and the proprietor of the car.[1]

Error to the superior court of Grand Rapids; Stuart,

[1] As to liability of automobile owner for negligence of chauffeur furnished by third person, see notes in 39 L. R. A. (N. S.) 933; 48 L. R. A. (N. S.) 424.

J.  Submitted June 30, 1915.  (Docket No. 48.)  De-
cided July 23, 1915.

Case by Euretta B. Sweetnam against Warren H.
Snow for personal injuries.  Judgment for plaintiff.
Defendant brings error.  Reversed; new trial denied.

*Travis, Merrick & Warner,* for appellant.

*Swarthout & Master,* for appellee.

MOORE, J.  The plaintiff, a school-teacher, 39 years
of age, was struck by an automobile owned by the de-
fendant, but driven at the time by an employee of a
public garage where the defendant kept his car.  For
the purpose of mailing a letter in the United States
mail box affixed to the south side of the front vestibule
of a trolley car, the plaintiff stood in the street near
where the front end of the car would stop.  After it
stopped and she had mailed her letter, in order to
regain the curb the plaintiff walked north past the
front end of the car, stepped into the north roadway
of the street, and was struck by the automobile, which
was going in the same direction as the street car.  The
two lights of the automobile were burning.  Proof
was introduced by the plaintiff tending to show its
speed was from 18 to 20 miles an hour.  The automo-
bile, which was a five passenger touring car, was
driven at the time by a Mr. Abbott.  The defendant
was in Boston at the time.  There was evidence that
the wife of the defendant had driven the car earlier
in the evening.  Mr. Abbott called for the car to take
it to the garage.  The accident occurred on one of
the direct routes between the residence of defendant
and Mr. Dowling's garage, which were over a mile
apart.  The defendant purchased the automobile of
Mr. Dowling about six months before the accident, and
both he and his wife were in the habit of driving it.
He employed no chauffeur, and had no garage of his

own. He had a contract with Mr. Dowling, to which reference will be made later.

At the close of the testimony on the part of the plaintiff, counsel for the defendant made a motion for a directed verdict for the defendant for various reasons. The trial judge denied the motion, and the defendant rested without introducing any testimony. The judge submitted the case to the jury upon the question of Mr. Abbott's negligence, and the plaintiff's contributory negligence, directing them that Mr. Abbott at the time was acting for Mr. Snow under a contract with Mr. Dowling, and, while so acting, Mr. Abbott was to be regarded in law as the servant of Mr. Snow. The jury returned a verdict of $2,600 in favor of the plaintiff. A motion for a new trial was later denied. The case is brought here by writ of error.

We quote from the brief of counsel for appellant:

"The questions we raise are but three in number, and may be stated in the form of the following propositions affirmed by the appellant, namely:

"I. The trial court erred in charging the jury that, as a matter of law, the relationship of master and servant existed between the defendant and Abbott.

"II. The plaintiff was guilty of contributory negligence, as a matter of law.

"III. The trial court erred in holding applicable to this case the ordinance of the city of Grand Rapids, relied upon by the plaintiff, relating to the management of motor vehicles in proximity to any street car which has stopped for the purpose of taking on or discharging passengers."

In our view of the law when applied to the facts disclosed by the record, it will be necessary to discuss the first proposition only.

Mr. Dowling was called as a witness, and, after testifying about his relations with the defendant, he gave the following testimony, to which plaintiff attaches much importance:

"During the time that Mr. Snow desired a driver,

I did not have any control over the speed that the car should go, or any control whatever as to the manner it should run, or as to where it should go. During the time that the car was stored with me, I did not have any arrangements whereby I had the right to rent the car or to let it out or run it myself.

"*Q.* Was there in your contract any time when you had control of the movements of the car outside of the time when it was in your garage building?

"*A.* No, sir."

It is apparent, as will appear later, that these were conclusions of the witness rather than a statement of the facts. Mr. Dowling's cross-examination shows what the contract between him and Mr. Snow required him to do. We quote from his cross-examination:

"My contract with the defendant was entered into in July or August, 1913. I recollect that Mr. Snow made a proposal to me, or inquired as to what I would perform certain enumerated services for per month. His inquiry related to services which he desired in the way of keeping the car at my garage, washing it, polishing, and oiling it. He also inquired as to my calling for the car at his residence or elsewhere in Grand Rapids and delivering it to him. I did not close a bargain with him at the first interview, but the matter was taken up subsequently, at which time we reached an agreement at $15 a month. I undertook by that agreement to perform all the services that I have mentioned for Mr. Snow, including the delivery of his car at his request at such place in Grand Rapids as he might designate, and also the getting of his car at such place in Grand Rapids as he might designate and the returning of it to my garage. I undertook by that contract to take good care of the car while it was in my possession.

"*Q.* Was anything said by you or by the defendant when you were entering into that bargain with him about what particular man should be permitted to drive his car?

"*A.* Nothing. only that  *  *  *  I was to furnish a man capable of driving the car to and from his residence.

"*Q.* The selection of that man was left to you, was it not?

"*A.* Yes, sir.

"*Q.* Did Mr. Snow reserve any right to select the man in your employ who should drive his car?

"*A.* No.   *   *   *   When Abbott entered my employ about December 1st, this contract between Mr. Snow and me had been in force some four or five months, and during that time I had stored and cared for his car at my garage, and men in my employ had delivered the car at his residence and called there for it during those four or five months prior to Abbott's coming into my employ.   There were probably three or four different men who had done that.   I hired all of those men, and I hired Abbott at a specified wage, and I paid that wage.   Neither Mr. Snow nor anybody else contributed to pay that wage.   Mr. Snow did not have anything to do with hiring Abbott or any of the other men who had ever driven his car out of my garage.

"*Q.* What were your instructions to your men in the garage in reference to using the cars of your customers?

"*A.* They were instructed never to use a customer's car except on order of the customer.

"*Q.* You would discharge a man if you found that he had taken a customer's car without authority, would you not?

"*A.* I certainly would.   *   *   *   I agreed with Mr. Snow that part of the services to be rendered by me for $15 a month with respect to his car was to cause his car to be taken in on request from his house to my garage."

Mr. Snow was called under the statute by the plaintiff as a witness and testified as to the ownership of the car.   He then testified to the contract between himself and Mr. Dowling.   His testimony in that regard is in accord with the testimony of Mr. Dowling.

The attorneys for the plaintiff cite, as sustaining the construction given to the contract by the trial judge, 26 Cyc. at pages 1519 and 1522, and also particularly the cases of *Janik* v. *Motor Co.*, 180 Mich. 557 (147

N. W. 510, 52 L. R. A. [N. S.] 294), and *Pease* v. *Gardner*, 113 Me. 264 (93 Atl. 550). A reading of these authorities does not impress us the same as they have impressed counsel. So far as they are applicable to the instant case, they tend to support the conclusion that Mr. Abbott was not an employee of the defendant.

The case of *Tornroos* v. *R. H. White Co.*, 220 Mass. 336 (107 N. E. 1015), is an instructive one. We quote from it:

"The material facts out of which these actions arise are these: The Autocar Company sold to the R. H. White Company two motor trucks, and agreed as a part of the contract to furnish with each for seven days without cost a chauffeur who was a thorough mechanic and who would instruct the men of R. H. White Company and to 'garage' the trucks, including the making of all ordinary repairs, for 12 months. The contract was in writing. During the seven-day instruction period, chauffeurs took the trucks from the garage of the Autocar Company and proceeded to the stable of the R. H. White Company, where one of its men boarded each of the trucks, which thereafter were used in the delivery of goods of the R. H. White Company until the end of the day, when the men of the R. H. White Company left, and the trucks were then driven from its stable to the garage of the Autocar Company by the chauffeurs. During the day the servants of the R. H. White Company gave directions as to the streets and houses to which the trucks should be driven in the delivery of goods, but the manner and speed of driving was wholly within the control of the chauffeurs, who were skilled mechanics in the general employ of the Autocar Company. On one of the journeys from the garage of the Autocar Company to the stable of the R. H. White Company during the seven-day period, and when the chauffeurs employed and paid by the Autocar Company were alone on the trucks, the plaintiff Karl was injured, as has been settled by verdict of the jury, while he was in the exercise of due care, through the negligence of the driver of one of the trucks. The jury found specifically that the negligent chauffeur at the moment of

the accident was a servant both of the R. H. White Company and of the Autocar Company. It is contended by each of the defendants that, as to it, this finding was unwarranted, and that a verdict should have been directed in its favor.

"The general principles of law which govern cases of this kind have been considered frequently and are well settled. In their application distinctions of nicety may arise when one in the general employment of another is by his consent lent or hired by his master to work for a third in some special service. The test to determine the legal responsibility of that third person for his conduct is whether, in the particular service performed by him, he continues liable to the control and direction of his master as to the means to be employed, and the result to be achieved, or becomes subject to that of the third person. This must be considered, as was said by Chief Justice Knowlton in *Shepard* v. *Jacobs,* 204 Mass. 110, at page 112 [90 N. E. 392, at page 393; 26 L. R. A. (N. S.) 442, 134 Am. St. Rep. 648], not merely with reference to 'the general business which the act is intended to promote, but the particular business which calls for the act, in the smallest subdivision that can be made of the business in reference to control and proprietorship.' The particular business which the negligent chauffeur was engaged in doing at the time of the accident was that of driving the truck. The driving of the truck during the seven-day period was, by the terms of the contract, exclusively within the control and direction of the Autocar Company. The truck was being driven to the place where the instruction of the servant of the R. H. White Company was to begin. But that place had not been reached. The man to be instructed had not yet appeared on the scene. The instruction had not begun. No employee of that company was on the truck at the time. It was not being used in its business of delivering goods. It was not even being employed for the instruction of its servant. It was wholly in the management and control of the Autocar Company. It was being taken by that company pursuant to its contract to a point where further performance of its contract was to take place. The business of the R. H. White Company had not begun. The only matter about which that company could then have given any authoritative

direction was at most as to the place where the instruction should be given and to which the truck should be taken for that purpose. But it could say nothing respecting the route, speed, or general or particular method of driving. Its representative was not present and was not intended to be present at the time of the accident, because its business then was not being done. It was not in a position and had no power to give any direction as to the concrete act of neglect which caused the injury. The chauffeur was not selected by the R. H. White Company. It did not hire him, nor could it discharge him or refuse to accept him, provided he was competent; it did not pay him directly or indirectly, save as his compensation may have been included in the cost of the truck. The circumstance that the truck belonged to the R. H. White Company is an important, but not decisive factor. See *Trombley* v. *Stevens-Duryea Co.,* 206 Mass. 516 [92 N. E. 764]. It is not quite enough to countervail those mentioned, which, being substantially undisputed, show, as matter of law, that the injuries to the plaintiffs were not caused by the R. H. White Company.

"On this point the case is close to the line, and there are none of our decisions precisely in point, but *Bowie* v. *Coffin Valve Co.,* 200 Mass. 571 [86 N. E. 914]. *Id.,* 206 Mass. 305 [92 N. E. 334]; *Dutton* v. *Amesbury National Bank,* 181 Mass. 154 [63 N. E. 405], and *Fleischner* v. *Durgin,* 207 Mass. 435 [93 N. E. 801, 33 L. R. A. (N. S.) 79, 20 Am. & Eng. Ann. Cas. 1291], are somewhat analogous, and like conclusions there were reached. *Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191 [96 N. E. 406, 38 L. R. A. (N. S.) 481, Am. & Eng. Ann. Cas. 1913A, 883, and note 885], and *Quarman* v. *Burnett,* 6 M. & W. 497, go further than is required to relieve the R. H. White Company from liability. In those two cases the defendants owned the vehicles, which were being used in their business by a driver furnished under contract by a third person, who alone had the authority to hire, discharge, and direct the driver as to the details of his duty of driving, and they were exonerated from liability. Other cases on all fours with the cases against the R. H. White Company hold that the defendant is not liable. *Neff* v. *Brandeis,* 91 Neb. 11 [135 N. W. 232, 39 L. R. A. (N. S.) 933]; *Quelette* v. *Superior*

*Motor & Machine Works,* 157 Wis. 531 [147 N. W. 1014, 52 L. R. A. (N. S.) 299]. See, also, *Meyers* v. *Tri-State Automobile Co.,* 121 Minn. 68 [140 N. W. 184, 44 L. R. A. (N. S.) 113]; *Dalrymple* v. *Covey Motor Car Co.,* 66 Ore. 533 [135 Pac. 91, 48 L. R. A. (N. S.) 424].

"It is plain, from what has been said, that the Autocar Company is liable. The injuries were the direct result of a negligent doing of its business by its servant hired by it and at the moment engaged in the performance of his duty as its employee. The actions against that defendant are well within numerous of our cases. They are in legal intendment almost exactly like *Roach* v. *Hinchcliff,* 214 Mass. 267 [101 N. E. 383]. They are in principle indistinguishable from *Driscoll* v. *Towle,* 181 Mass. 416 [63 N. E. 922]; *Corliss* v. *Keown,* 207 Mass. 149 [93 N. E. 143]; *Hunt* v. *New York, New Haven & Hartford Railroad,* 212 Mass. 102 [98 N. E. 787, 40 L. R. A. (N. S.) 778]; *Brow* v. *Boston & Albany Railroad,* 157 Mass. 399 [32 N. E. 362]; *Hussey* v. *Franey,* 205 Mass. 413 [91 N. E. 391, 137 Am. St. Rep. 460]; *Pigeon's Case,* 216 Mass. 51, 54 [102 N. E. 932; Am. & Eng. Ann. Cas. 1915A, 737]; *Standard Oil Co.* v. *Anderson,* 212 U. S. 215 [29 Sup. Ct. 252].

See, also, *Quimby Co.* v. *Estey* (Mass.), 108 N. E. 908, and the case of *McBride* v. *Shingle Co.,* 173 Mich. 248 (138 N. W. 1077).

We think it clear that, when the injury for which suit is brought was sustained, Mr. Abbott was engaged in the work of performing the contract of his employer, Mr. Dowling, with Mr. Snow, and that the defendant was in no way legally responsible for his misconduct. It follows that a verdict should have been directed for defendant.

The judgment is reversed, and no new trial is granted.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.