Argued at Pendleton October 28; affirmed December 3, 1940

# ELLENBERGER *v.* FREMONT LAND CO. ET AL.

(107 P. (2d) 837)

*James Arthur Powers*, of Portland, for appellants.

*Will H. Masters*, of Portland (Newbury & Newbury, of Medford, and Bert C. Boylan, of Bend, on the brief), for respondent.

BELT, J.  This is an action to recover damages for personal injuries sustained on account of being struck by an automobile driven by defendant Nixon, the alleged agent of the other defendants.  The accident occurred at about 8 o'clock in the evening of September 3d, 1938, on The Dalles-California highway five miles south of the city of Bend.  From a judgment in the sum of $12,122.50 in favor of the plaintiff, the defendants — excepting the defendant L. A. W. Nixon—appeal.

Appellants assign as error the refusal of the court to allow defendants' motions for a directed verdict based upon the grounds: (1) Lack of any evidence tending to show relationship of agency existing between defendant Nixon and other defendants at time

of accident; (2) plaintiff's contributory negligence as a matter of law. In considering whether error was thus committed, the facts will be stated in the light most favorable to plaintiff. In considering a motion for a directed verdict—constituting as it does a demurrer to the evidence—the court is not concerned with the conflict of the evidence. It is elementary that every reasonable intendment must be given to evidence tending to support the allegations of the complaint.

The defendant Walker Range Patrol Association was organized for the purpose of protecting certain timber holdings of its members from fire. This nonprofit organization was comprised of the defendants Fremont Land Company; The Shevlin-Hixon Company; Gilchrist Timber Company; and Gilchrist and Company, Limited — all of which companies owned large tracts of timber within boundaries of the Walker Range. Joe Haner, district fire warden, was also a member of the association, and acted as its secretary. The defendant Nixon was in the general employ of the Shevlin-Hixon Company, but was subject to the call of the Walker Range Patrol Association when his services were needed to investigate the cause of fires and to apprehend the persons responsible therefor. When Nixon was working for the association, his wages were paid by it and he was subject to its control and direction.

On the day in question, Nixon was returning from a trip made at the request of Joe Haner, secretary of the association, to investigate two fires started on the Walker Range. Nixon, at such time, was driving a Chevrolet automobile owned by the Walker Range Patrol Association. This car was used exclusively by Nixon in investigating forest fires within the Walker

Range. The car was thus registered with the secretary of state: "Walker Range Patrol Association c/o L. A. W. Nixon."

Plaintiff's son, 26 years of age, was driving in a northerly direction a truck and trailer heavily loaded with household goods en route to their new home at Ontario, Oregon. About five miles south of Bend, the truck and trailer were stopped for the purpose of replacing the left rear tire which had gone flat. The right wheels of the truck were 18 inches off the east edge of the pavement. Plaintiff says, in effect, that, on account of the condition of the shoulder of the highway—which was composed of loose pumice soil—it was impracticable for him or his son to drive the heavy load further off the pavement. While plaintiff and his son were engaged in changing the tire on the truck, they were struck by an automobile driven by defendant who came from the rear and was proceeding in a northerly direction towards the city of Bend. As a result of the accident, plaintiff was seriously injured and his son was killed.

It was dark but atmospheric conditions were described as "clear" and the pavement was dry. The highway—twenty feet in width with yellow line in the center thereof—was straight for a distance in excess of a quarter of a mile south of the place of the accident and was comparatively level. The lights on the truck were burning as was the tail light on the rear thereof, although, on account of the trailer, the latter could not be seen by a driver approaching from the rear. There was no tail light on the trailer, although there was a red reflector thereon four inches in diameter. The plaintiff, in reference to the lights, testified: "It (referring to the truck) had two proper

headlights, the green light on the left side and a red tail light and a red reflector on the left hand part * * *. All lights were burning.''

In describing the accident, plaintiff said:

''Well, we jacked the car up and took the wheel off just as quickly as we could. We were making a quick change and put on the spare that I had taken out, and we were just tightening—my son was just tightening up the taps and the loose taps and I was picking up things to putting them away and I saw two cars coming from the south at a pretty high speed, and I watched them, and the one car pulled clear out around on the opposite side of the road, clear over on the left side of the road and passed us, but the other car was hanging to the right; and I had just thrown up the tire on the back end of the truck that we had taken off and backed up against the trailer in front of the wheel to see how that car was going, and, about a hundred feet from me, I would judge, I could see that it went off the pavement to the right and then it turned and I thought that it was going to go around and miss us; by the time that I could decide it was going to hit me I had only a split second to think, move, and all the time I had to do it was to turn my back and take the jolt, and I just had time enough to think that it would be easier to take the jolt to my back than it would face on, and that is the last I know.''

Nixon says he was traveling between 45 and 50 miles an hour when he ''came on to an object'' in front of him about 100 feet away and that he could not tell what it was—''it was just a blur to me.'' Nixon said he set his brakes and turned to the left, and ''as I came about opposite of the trailer or truck * * * an object stepped from the rear and side of the car * * * directly in front of my car.'' Continuing, the witness said: ''* * * my car jumped about that high off the pavement, and at that time I seen headlights com-

ing and I pulled my car to the right, and I had no control of it. * * * After 108 or nine feet it turned over on its left side." Nixon specifically denies having struck the truck or trailer and asserts he did not know, at the time, that he had hit the plaintiff or his son. Nixon said that, after the accident, he found a large tire, the rim about six or seven inches from the yellow line in the center of the highway and opposite the door of the truck. He claims also to have found a "jack laying there and a number of wrenches and a hammer." Nixon claims it was running over these objects which caused him to lose control of his car. Indeed, Nixon says it was the tire in the highway that "caused all of this damage."

Plaintiff asserts, however, that, at the time Nixon's car passed, there were no objects left in the highway. Witness Freeman says that examination immediately after the accident disclosed no equipment or tire on the highway. There is also ample evidence tending to refute Nixon's contention that he did not strike the truck or trailer. From the pictures introduced in evidence it would seem that something must have struck them. The broken glass of the red reflector on the pavement is significant.

Plaintiff contends that Nixon was under the influence of intoxicating liquor. It appears that, about three miles south of the place where the accident occurred, Nixon's car had run off the highway and landed in a ditch—the transmission resting on a stump and the wheels spinning. Witnesses Hollinshead, Beaver, and Freeman, who were passing, discovered Nixon's predicament and helped to get the car back onto the highway. Beaver testified that, while working on the car and later at the scene of the accident,

he smelled intoxicating liquor on Nixon's breath. In explaining how he happened to be in the ditch, Nixon testified that he stopped to fill his radiator. However, Freeman and Beaver testified that Nixon told them while his car was off the highway that the reason he was there was that "another car had crowded him off the highway."

After Hollinshead had driven Nixon's car from the ditch onto the highway, Nixon proceeded north towards Bend. Freeman drove his own car in advance of Nixon and Hollinshead immediately followed Nixon, driving at a speed of 45 or 50 miles an hour. Hollinshead said he did not long see the tail lights of Nixon's car after the latter got under way.

In the light of the above evidence can it be said as a matter of law that the relationship of agency did not exist between Nixon and the other defendants? Can we say that there was no issue of fact to submit to the jury relative to the alleged contributory negligence of the plaintiff? These questions will be considered in the order stated.

■■■■ The trial court properly submitted the issue of agency to the jury. The ownership of the car by the defendant Walker Range Patrol Association is admitted. From the proof of ownership, the jury was permitted to draw the reasonable inference that Nixon at the time of the accident was agent of the association and acting within the scope of his employment. As stated in *Houston v. Keats Auto Co.,* 85 Or. 125, 166 P. 531:

"Where plaintiff proves that the vehicle which caused the damage belonged to the defendant, the jury is entitled to infer that the driver was defendant's servant and that the vehicle was being used for defendant's purposes."

Also, to the same effect, see: *West v. Kern,* 88 Or. 247, 171 P. 413, 1050, L. R. A. 1918D, 920; *Doherty v. Hazelwood Company,* 90 Or. 475, 175 P. 849, 177 P. 432; *Sather v. Giaconi,* 110 Or. 433, 220 P. 740; *Millar v. Semlar,* 137 Or. 610, 2 P. (2d) 233, 3 P. (2d) 987; *Fleming v. Ambulance Company,* 155 Or. 351, 62 P. (2d) 1331, 64 P. (2d) 519. The same principle was adhered to in *Judson v. Bee Hive Auto Ser. Co.,* 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944, but, under the facts, it was held that no reasonable inference of agency could longer be drawn when it was shown by the uncontradicted evidence that Judson had rented the automobile from the defendant under the terms of a written contract. Under such circumstances, the prima facie case created by proof of ownership was overcome as a matter of law. Obviously, the factual situation in *Judson v Bee Hive Auto Ser. Co.,* supra, is entirely dissimilar from the one in the instant case. It is only in exceptional cases that the court can say as a matter of law that an inference or presumption has been overcome or destroyed by the force and effect of other evidence. Ordinarily, the question is for the determination of the jury.

In addition to the inference of agency arising from proof of ownership, the plaintiff well points to the following testimony of Haner, secretary of the defendant association:

"Q. Was Mr. Nixon on September 3d, 1938, in the employ of the Walker Range Patrol Association? A. Yes.

"Q. What were his duties under that employment? A. To run some fire trespasses in Klamath county, to investigate, I presume.

\*        \*        \*        \*        \*        \*        \*

"Q. What I am getting at is this: He was at times subject to the call of the Walker Range Patrol Association, was he not? A. By the borrow and loan process, yes.

"Q. At all times subject to call, and you called him, of course, only when there was some— A. When there was some trespass to be investigated.

"Q. When someone started a fire? A. Yes.

\* \* \* \* \* \* \*

"Q. Did he do all of the investigating of that character for the Walker Range Patrol Association, all that was done? A. Yes."

■ Appellants further contend that the doctrine of respondeat superior does not apply since Nixon as deputy fire warden was performing a governmental function at the time of the accident. We see no merit in this contention. It is conceded that Nixon was in the employ of the Walker Range Patrol Association which was organized for the purpose of protecting timber owned by its members. This association was not an agency of the state. The mere fact that Nixon at such time might also have been a deputy fire warden does not alter the situation. Nixon was engaged in looking after the particular interests of the members of the association and not those of the public generally. See *Antin v. Union High School District No. 2*, 130 Or. 461, 280 P. 664, 66 A. L. R. 1271. Certainly defendants were not entitled to a directed verdict on the ground that Nixon was performing a governmental function.

Plaintiff was charged with being negligent in several particulars but it is upon the failure to have a tail light on his trailer as required by § 55-2601 (d), Oregon Code Supplement 1935, that contributory negligence as a matter of law is alleged, precluding re-

covery. Relative to this phase of the case, the court instructed the jury as follows:

"I instruct you that one charge of negligence against the plaintiff here, by the defendants, is that he failed to have a lighted lamp on the rear of the equipment, or trailer, which could be seen for a distance of five hundred feet to the rear thereof. Under the evidence here, it is admitted by the plaintiff that there was no such lighted lamp on the rear of the trailer. In this respect I instruct you that the law required a person stopping or parking on the highway to have such a lamp on the rear of the motor vehicle, or, in this case it would be the trailer, and his failure to have such a lamp is negligence per se. By 'negligence per se', is meant negligence in and of itself. And his failure to have this light is a violation of the law, and if you find from a preponderance of the evidence that such violation of the law on the part of the plaintiff was the proximate cause of the injuries, or a contributing proximate cause of the accident and injuries here, then in that event, your verdict would be for the defendants."

■ It is clear that plaintiff was guilty of negligence in failing to have a tail light on the trailer. The close question is whether the failure to have such light can be said, as a matter of law, to have been a "contributing proximate cause" of the accident. We think the court properly submitted the question to the jury by instructing, in substance, that the absence of the tail light would not preclude recovery if plaintiff had a reflector on the trailer which Nixon, in the exercise of reasonable care, could have seen in time to avoid injury. Of course, the purpose and object of the law requiring a tail light is the protection and safety of those who travel on the public highways during the night. For the tail light required by the motor vehicle act, the plaintiff substituted a reflector four inches in diameter. However, if the reflector did,

in fact, apprise Nixon of the existence of the truck and trailer on the highway, in time so that, in the exercise of reasonable care, he could have passed around it in safety, it cannot be said that the failure to have the tail light had any causal connection with the injuries of which plaintiff complains.

■ The same principle of law was involved in *Landis v. Wick*, 154 Or. 199, 57 P. (2d) 759, 59 P. (2d) 403. In that case a boy riding a bicycle on the highway at twilight, having neither a light in front nor a reflector on the rear as required by law (1931 Session Laws, Ch. 360, § 58), was struck by an automobile. The alleged contributory negligence of the boy was held, under the facts and circumstances, to be a question for the jury. The authorities on the question from various jurisdictions—many of which appellants here cite—were reviewed at length. We see no need for repetition. As was well said by Mr. Justice Cardozo in *Martin v. Herzog*, 228 N.Y. 164, 126 N.E. 814:

"We must be on our guard, however, against confusing the question of negligence with that of the causal connection between the negligence and the injury. A defendant who travels without lights is not to pay damages for his fault, unless the absence of lights is the cause of the disaster. A plaintiff who travels without them is not to forfeit the right to damages, unless the absence of lights is at least a contributing cause of the disaster. To say that conduct is negligence is not to say that it is always contributory negligence."

Mr. Freeman testified that, in his car, he approached the scene of the accident at a speed of about 50 miles an hour and first saw the truck and trailer 200 or 250 feet distant. He said he saw the reflector on the rear end of the trailer and that he had no diffi-

culty in "getting by this truck and trailer." Freeman said he observed a man fixing a tire, who "stepped in between the truck and trailer" as he passed by.

Hollinshead, who followed Nixon's car, testified that he saw the red reflector on the trailer about 100 feet away; that he "had to drive over the yellow line to get by"; and that he stopped his automobile "a little past the front of the truck."

In view of the fact that Freeman and Hollinshead saw the red reflector on the trailer in sufficient time to pass the truck and trailer in safety, we think the jury was permitted, from all the facts and circumstances, to draw the reasonable inference that Nixon also could have done so had he exercised reasonable care. At least, different reasonable inferences relative to such matter could be drawn from the facts proven. Hence, it was a question for the jury. We conclude that the issue of contributory negligence was for the jury to decide.

Nixon, in his amended answer, alleged that, at the time of the accident, he was "engaged in performing services for the Walker Range Patrol Association and was at said time acting in the course of his employment." The court instructed that this admission was binding on Nixon but that the "other defendants in the case have denied these matters" and the issue of agency was for the determination of the jury.

Error is predicated on the ruling of the court permitting Nixon to testify for whom he was working. Appellants assert the fact of agency cannot be proved by the declarations of an agent. We agree that the declarations of an agent outside of court to third persons are inadmissible to establish agency, but such rule has no application to the matter under consid-

eration. It was competent for Nixon to testify that he was acting as agent. As said in *Larkin v. Carstens Packing Co.*, 80 Or. 104, 156 P. 578, "The right to prove a parol agency by testimony of the person who claims to be the agent is not open to debate." Also see: 3 C.J.S. 287; 21 R.C.L. 821.

It is urged that the court erred in withdrawing from consideration of the jury the specification of negligence that plaintiff failed to have out flares or lanterns to warn others using the highway of the truck and trailer stopped on the highway. Subdivision (b), Ch. 327, Oregon Laws for 1937, in so far as the same is material herein, provides:

"Whenever any motor truck or motor bus and its lighting equipment are disabled during the period when lighted lamps must be displayed on vehicles and such motor trucks or motor bus can not immediately be removed from the main-traveled portion of a highway outside of a business or residence district, the driver or other person in charge of such vehicle shall cause such flares, lanterns or other signals to be lighted and placed upon the highway, one at a distance of not less than 100 feet or more than 300 feet in advance of such vehicle, one at a distance of not less than 100 feet or more than 300 feet to the rear of the vehicle and the third upon the roadway side of the vehicle * * *."

The above statutory regulation is not applicable for the reason that there is no evidence tending to show the lights of the truck or trailer were "disabled". Plaintiff violated the law by failing to have a light on the rear of his trailer, but no question of a disabled lighting equipment is involved.

Appellants complain of the following instruction given by the court:

"I instruct you that if you find from a preponderance of the evidence and under these instructions

that the defendant L. A. W. Nixon is liable to the plaintiff for the injuries and damages he sustained, if any, and you further find from a preponderance of the evidence that defendant L. A. W. Nixon, was at the time the agent or servant of the Walker Range Patrol Association, and acting in the course of and within the scope of his employment, then I instruct you that each of the defendants is likewise liable with said Nixon for such injuries and damages, if any, sustained by plaintiff.''

■ We agree with appellant that mere membership in the association would not make the defendant companies liable for the tort of Nixon, but it should be borne in mind that the association owned the car Nixon was driving and had the right of control over the use of the same. Furthermore, Nixon was acting for and on behalf of the members of the association in furtherance of the common enterprise in which they were engaged.

The trial court was deluged with 60 requested instructions, 27 of which were asked by defendants. It is not surprising that the court's instructions might have failed to entirely satisfy counsel and, in one or two instances, perhaps to have strayed somewhat from the paths of accuracy. However, we believe, under such circumstances, the appellate court should be somewhat charitable to trial courts and, in the language of the poet, ''be to their faults a little blind and to their virtues very kind.''

The court fully and fairly submitted the cause to the jury and we see no error justifying a reversal.

It follows that the judgment is affirmed.

BEAN and LUSK, JJ., not sitting.