Argued October 30, 1950; reversed March 7, 1951

# BUTENSHON *v.* SHOESMITH ET AL.

228 P. 2d 462

*John F. Kilkenny* argued the cause for respondent. On the brief were Raley, Kilkenny & Raley, of Pendleton.

*W. C. Perry* argued the cause for appellant. On the brief were Randall, Perry & Wells, of Pendleton.

Before Lusk*, Chief Justice, and Brandt†, Rossman, Hay, Latourette and Warner, Justices.

LUSK, J.

The plaintiff, E. M. Butenshon, sued the defendant and appellant, Ivan A. Shoesmith, and the defendant, Beldon Hall, to recover damages for personal injuries suffered by the plaintiff when he was struck by an automobile operated by the defendant Hall. There was

---

\* Chief Justice when this case was argued.
† Chief Justice when this opinion was rendered.

a verdict and judgment against both defendants from which Shoesmith alone has appealed.

The sufficiency of the evidence of Hall's negligence is not disputed. The only question for our consideration is whether there is any substantial evidence in the record which would authorize a finding that, at the time of the accident, Hall was the agent of Shoesmith in the operation of the automobile, thus making the latter liable for the former's negligent driving under the doctrine of *respondeat superior*. In the court below motions submitted by Shoesmith (who will hereinafter be called the defendant) for a nonsuit and directed verdict, based on the ground that there was no such evidence, were denied, and the rulings are assigned as error.

The facts are as follows: The defendant conducted a wholesale and retail ice cream business in the city of Pendleton called The Orchid Dairy and owned a Plymouth coupe which he used in connection with the business. On August 9, 1948, pursuant to an arrangement previously made, the defendant drove the car to a garage operated by Robert Hall and his brother (not, however, Beldon Hall) for the purpose of having a body and paint job done on the car. The Hall garage was located outside the city limits of Pendleton about a mile and a half from the business district. When the defendant arrived at the garage Robert Hall and Beldon Hall were there. Beldon, a brother of the partners, was not in business with, nor employed by them, but, to use his own words when testifying, "was helping them get started in business". After Robert Hall and the defendant had agreed upon the work to be done on the car the defendant, according to Robert Hall, asked the latter if he would take him (the defendant) back to town and return the car to the garage. Robert

Hall asked Beldon if he would do so. Robert Hall testified: "I asked him [Beldon] if he wanted to. I never told him to take him back. I asked him if he cared to take him back. He could have refused to take it back, and I would have had to take it back." Beldon acquiesced in the request and entered the car with the defendant, who drove to his store where he got out, leaving the car in Beldon Hall's possession. Beldon then started on the return trip to the garage, and en route had the accident which resulted in this lawsuit.

The testimony of the defendant differs from that of Robert and Beldon Hall in that the defendant swore that he did not make a specific request of Robert Hall to drive him back to his store and return the car to the garage. He swore that upon arrival at the garage Beldon asked him if he was ready to have the work done on the car, to which the defendant answered "Yes". Whereupon Beldon got in and the defendant drove off. He was asked by counsel for plaintiff examining him as an adverse witness, "Now when you went out there were you expecting to ask somebody to drive you back in?" and answered: "It was taken for granted. They done work on the car several times. It was the usual procedure. I would get driven back, and I would go in the evening and pick it up." He further testified that he had a rather small business which he was running himself, and that it was necessary for him to get back to the business.

Beldon Hall testified that he knew what work was to be done on the car, that it was to be painted after "taking out the dents * * * and things like that". He testified that he was "helping his brothers out with that kind of work". Substantially, he corroborated Robert Hall's testimony that the defendant asked to

be driven back to town, and that he did so at his brother's request.

Robert Hall testified that the partnership did not "volunteer" such service as calling for customers' cars nor offer it to the public unless it was specifically asked for, but that they had a fixed policy in that regard which was as follows: "We do pick up and deliver, and take people back to town when they bring their cars out if they ask for it." He further testified:

"Q. As I understand it, you and your brother opened a garage and body shop in May, 1948?

"A. Yes.

"Q. And you are still operating that business?

"A. Yes. I am.

"Q. And where is that business located?

"A. It is located in Riverside.

"Q. Outside the limits of the City of Pendleton?

"A. Yes.

"Q. About how far would you say it is from your place of business to the business district of Pendleton?

"A. About a mile and a half, I believe.

"Q. When your patrons bring a car to your place of business and you are going to keep it all day, it is necessary for them then to find transportation back to town?

"A. Yes. It is.

"Q. And if they request you to take them back, you do?

"A. Yes.

"Q. Usually you take them back in their car?

"A. Sometimes. Yes.

"Q. And sometimes you use your own car?

"A. Yes.

"Q. Then that is for the convenience of your customers because of your location, isn't it?

"A. Yes."

He knew at the time the car was driven away that it was to be returned to the garage.

The testimony of Robert Hall and the defendant is in agreement that the Halls had worked on the car before the day in question, and that just prior to the accident, the Hall brothers and the defendant had had a conversation relative to the work to be done that day. With reference to this the defendant testified:

"Q. Had you made previous arrangements, or notified them when you would take the car out when you took it out on the 18th?

"A. We discussed having a paint job done on it. I couldn't let them have it so as to do the car all at once. They kept working on the body on free time when I could let it go. That's the way we done. It was taken out several times for that reason.

"Q. Did anyone notify you?

"A. Yes. Kenneth said he would go to work on it, and to bring it down."

■ The foregoing constitutes in substance all the relevant evidence upon the question for decision. That evidence, in our opinion, demonstrates that the transaction was one of bailment of the car to the garage men, the Hall brothers, and in that view the defendant cannot be held liable for the negligent driving of Beldon Hall. *Kantola v. Lovell Auto Co.*, 157 Or. 534, 72 P. 2d 61; *Brown v. Fields*, 160 Or. 23, 83 P. 2d 144.

■ The accepted rule is that when a garage man calls for the customer's car for the purpose of taking it to his garage and making repairs, or delivers it after making repairs on it, as a part of the service which he renders, either under the express terms of a contract or in accordance with an established custom, the garage man, while so in possession of the car, is a bailee thereof and not the agent or servant of the owner so as to cast

liability upon the owner for his negligent driving. *Perry v. Fox,* 93 Misc. 89, 156 N.Y.S. 369; *Neff v. Brandeis,* 91 Neb. 11, 135 N.W. 232, 39 L.R.A. (n. s.) 933; *Sweetnam v. Snow,* 187 Mich. 414, 153 N. W. 770, L.R.A. 1916 B 757; *Woods v. Bowman,* 200 Ill. App. 612; *Stamper v. Jesse,* 199 Ky. 324, 250 S.W. 1008. For other cases see Annotation, 46 A.L.R. 840.

■ When, however, the delivery of his car to the owner by a garage man is no part of his independent occupation as such and not a necessary or usual incident to the work of repairing the car, the garage man, in making such delivery, may properly be found to be the servant of the owner and the owner liable to a person injured by the garage man's negligent driving. *Marron v. Bohannan,* 104 Conn. 467, 133 Atl. 667, 46 A.L.R. 838; *Andres v. Cox,* 223 Mo. App. 1139, 23 S. W. 2d 1066.

■ Where the evidence in a case of this kind is uncontradicted and free from conflicting inferences the question is one of law to be determined by the court (*Kantola v. Lovell Auto Co.,* supra), though a court is not justified in taking such a question from the jury unless the evidence in regard thereto is clear and unequivocal. *Miller v. Service and Sales, Inc.,* 149 Or. 11, 38 P. 2d 995, 96 A.L.R. 628; *Lane v. Roth,* 195 Fed. 255.

The evidence here permits of no other construction than that the garage men, acting through their agent, Beldon Hall, brought the defendant's car from his place of business to their garage as a part of the service they undertook to render under their contract to repair the car. The only conflicting evidence is on an immaterial point, for it is all one whether on the day of the accident the defendant made the specific request to which Robert

and Beldon Hall testified, or whether, in view of the previous dealings between the parties, the service was something to be "taken for granted", as the defendant put it. Nor is it open to doubt that Beldon Hall, in driving the car, was doing the work of the partnership. The fact that he was not in the general employ of the partnership and received no compensation from it in no way affects the conclusion that he was its agent for the particular occasion. See definition of Agency by the American Law Institute, Restatement of Agency, § 1, quoted with approval in *Kantola v. Lovell Auto Co.,* supra, 157 Or. 537. See, also, *Nalli v. Peters,* 241 N. Y. 177, 149 N. E. 343.

A parallel case is *Perry v. Fox,* supra. Fox drove his car to a garage kept by one Hill for the purpose of having some repairs done on it. Hill got in and rode with Fox to a country club where Fox left the car and turned it over to Hill, who collided with the plaintiff's car on the way back to the garage. In an action brought by the plaintiff against Fox it was held that the relationship between Fox and Hill was that of bailor and bailee and that Fox was not liable. The court said: "When Fox delivered the automobile to Hill, he parted with all control over it. He retained no supervision over Hill as to the manner or method of the car being put in repair, or being brought to the repair shop of Hill."

The rules of law governing this case are well settled. The problem is one of their application to a particular set of facts. It would not be profitable, therefore, to discuss the cases upon which the plaintiff relies. It will suffice to say that in those cases the courts recognize the principles which we have stated here; but, considering those principles in their relation to evidence differ-

ent in material particulars from the evidence in this case, hold that, either because of conflicts in the testimony or in permissible inferences therefrom, the question was one for determination by a jury.

It is suggested in the plaintiff's brief that the case was properly submitted to the jury because of the inference of agency arising from the fact that the defendant was the owner of the automobile, the plaintiff citing *Fleming v. Ambulance Co.,* 155 Or. 351, 62 P. 2d 1331, 64 P. 2d 519, and *Ellenberger v. Fremont Land Co.,* 165 Or. 375, 107 P. 2d 837. We think the contention is sufficiently answered by what was said by Mr. Justice RAND, speaking for the court, in disposing of a like contention made in *Kantola v. Lovell Auto Co.,* supra, 157 Or. 539 et seq.

■ Our conclusion is that, when the defendant turned his car over to Beldon Hall at his place of business, in law he delivered it to Hall Brothers for the purpose of carrying out their contract of repair, that from that time on Hall Brothers were bailees of the car and the defendant had no right of direction or control of Beldon Hall in driving the car, and was, therefore, not liable for his negligence.

Such a holding is well within the principle of *Kantola v. Lovell Auto Co.* and *Brown v. Fields,* both supra, and is not in conflict with *Dalrymple v. Covey Motor Car Co.,* 66 Or. 533, 135 P. 91, 48 L.R.A. (n. s.) 424.

The judgment is reversed with directions to enter judgment for the defendant.