[No. 23583. Department Two. February 29, 1932.]

J. H. Turner, *Respondent,* v. Ira C. Good *et al., Appellants.*[1]

[1]Reported in 8 P. (2d) 414.

*Shank, Belt, Fairbrook & Rode, Jo D. Cook,* and *Arthur D. Langlie,* for appellants.

*Harry L. Parr* and *Oliver R. Ingersoll,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries. The cause was tried to the court and a jury. At the conclusion of the plaintiff's evidence, the defendants challenged the sufficiency thereof and moved for judgment, which motion was overruled. At the conclusion of all the testimony, the motion was repeated and again overruled. The jury returned a verdict in favor of the plaintiff in the sum of three thousand dollars. The defendants moved for judgment notwithstanding the verdict and, in the alternative, for a new trial, both of which motions were overruled. Judgment was entered upon the verdict, from which the defendants appeal.

The accident out of which the litigation arose happened on one of the graveled highways in Thurston county at about nine o'clock p. m., September 2, 1930. The highway extends east and west. The respondent lived a short distance south of this highway, and a driveway extended from the south side of the highway to his house. On the night on which the accident happened, there was no fog and the stars were shining.

James A. Van Eaton and the respondent came from the east on the highway in an automobile driven by Van Eaton, who intended to stop at the driveway in order that the respondent might alight from the car and go up the driveway to his home. The car was not stopped at the driveway, but about fifty-seven feet west of the west line thereof. After the car stopped, Van Eaton threw off the motor, and the two engaged in conversation for a brief period of time.

The respondent got out of the car on the north side

on which he was sitting, passed around the rear end, and, when he came to the left side of the car at the rear, he placed one hand on that fender, looked to the west and saw one dim light. He looked to the east and saw no lights. The highway at this point was straight for a considerable distance in each direction. To the west there was a five per cent grade, ascending eastward. After the respondent alighted from the car, Van Eaton filled and lighted his pipe, and then had some difficulty in starting the car which he was driving, it being a car which he had borrowed for the day and with which he was not very familiar.

The appellants, Ira C. Good and wife, were proceeding east along the south side of the highway. They saw the Van Eaton car parked on its right-hand side of the road, and, just after they passed it, they met a car, coming from the east, with bright headlights. Just after passing this car, the left front wheel of the car in which the appellants were riding, and which was driven by Mr. Good, passed over something which caused a slight jar, and Mrs. Good said: "What was that you run over?" The car was stopped; Mr. Good got out, and found the respondent lying in the road just south of the center and near the point where the driveway would enter the highway.

At this time, another automobile approached from the east, driven by Glen Southwick, which, after being hailed by Mr. Good, stopped. The respondent was unconscious, and Mr. Southwick and Mr. Good carried his body off the highway to the south side thereof. Later, he was taken to the hospital Mr. Southwick testified that another car was ahead of him as he came down the highway, and Mr. Van Eaton testified that a car, as already stated, passed him before he started the car in which he and the respondent had been riding.

30

When Mr. Good was asked by Mr. Southwick, as the latter testified, how the accident happened, he replied:

"He said the lights shined in his eyes and he couldn't see. He meant the car that was coming in front of me."

As to the manner in which the accident happened, the respondent testified as follows:

"I walked around back and put my hand on the left rear fender of the car and looked both ways. I looked to the east first and saw no car lights at all. I could see a half a mile from the school house exactly to the next bend in the road over there . . . I didn't see any car coming from the east. Then I looked down to the west and I saw one dim light. I couldn't tell you where it was. My idea was that it was at the bend of the road. The road is straight from the west half a mile until you strike the woods there. . . . I don't know whether this dim light was on Mr. Good's car. I didn't see his car at all. I looked down to the west and saw this dim light and that is all I could see down there. Then I started for the driveway right here. I go in the driveway always. I don't go into the path. I don't remember being hit. After I started to walk from the left rear wheel of the car towards my driveway I did not see this car coming from the east. The last thing I remember about it is that I was standing here with my hand on the left rear fender of the Van Eaton car and had looked down here to the west and had turned around and started for the driveway. That was the last I remember. I don't know how far I had gone, how many steps I had taken, never heard the Good car at any time."

▉ The first question is whether the evidence was sufficient to take the case to the jury on the question of whether the appellants' car was being driven at that time of night without the headlights burning. There is no evidence of excessive speed or of any other act of negligence, aside from the claim that the headlights of the car were not burning.

Upon the question of the headlights, Mr. and Mrs. Good both testified positively that the headlights of the car in which they were riding were burning. Mr. Southwick, who approached from the east and helped to carry the body of the respondent off the highway, testified that, as he approached, the headlights of the car of appellants, which was parked on the side of the road, were burning. The respondent testified that he saw a dim light to the west when he started for the driveway, and there is no evidence that any other car came from that direction other than the car of the appellants. Mr. Van Eaton testified that he did not see any car coming from the west, and did not know that one had passed him while he was in the act of starting the car in which he was traveling, but recognized that appellants' car must have passed by. He testified:

"Mr. Good's car must have went past me. I didn't see it. I never told anybody that I did see it. . . . As a matter of fact there must have been a car gone by there. I wish I could say that I saw it go by. My explanation is that I was looking down in my car looking for my starter humped over there. That must have been when his car went by."

There is no other evidence on the question of lights.

As indicated above, there was positive and direct testimony of both of the appellants that the headlights of the car were burning as they drove along the highway, and the testimony of Mr. Southwick, who was entirely disinterested, that the lights were burning when he saw the car as he approached from the east. The respondent gave no testimony upon the subject, and testified that he did not remember anything that happened after he left the rear of Mr. Van Eaton's car and started for the driveway.

There was no substantial evidence that the lights on the car of the appellants were not burning, and a ver-

dict which does not rest upon such evidence cannot be sustained. The mere fact that the appellants' car struck the respondent while the driver thereof was blinded by the headlights of the car which approached from the east, does not make a question for the jury. In *Johnson v. Auto Interurban Co.,* 139 Wash. 132, 245 Pac. 920, it was held that, as a matter of law, the driver of a motor vehicle was not negligent in running over a man in the roadway, outside of the city limits, where he could not see the man in time to avoid the accident, owing to the glaring headlights of a car stopped on the highway. It was there said:

"The accident occurred on a highway some two miles from the nearest town or city, and we think it must be held, as a matter of law, as counsel for the appellant insisted at the trial, that the evidence is not sufficient to show negligence on the part of the bus driver. It cannot be said that, at such a time and place, the operator of a public service vehicle, in the exercise of due care, must stop or suspend his service, because of the momentary and transient interference caused by the glaring headlights of another automobile, in the absence of some reasonable and timely notice or reasonable opportunity for the observation of danger immediately beyond."

The case of *Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92, is not in point, because there there was evidence of an unlawful rate of speed which is not present in the case now before us. The evidence was not sufficient to take the case to the jury upon the question of negligence.

■ If, however, it be assumed that the question of the presence or absence of burning headlights was one for the jury, the result would be the same. Section 6340, Rem. Comp. Stat., subd. 7, provides:

"Pedestrians on the public highways between the period from one-half hour after sunset to one-half hour before sunrise shall travel on and along the left

side of said highway, and the pedestrians upon meeting an oncoming vehicle shall step off the traveled portion of the highway.''

Following the direction of this statute, it would have been the duty of the respondent, after he alighted from the automobile in which he was riding, to have proceeded east along the north side of the highway until he reached a point opposite the driveway leading to his home. This he did not do, but from his own testimony says that he started from a point at the left rear of the car from which he had alighted and proceeded towards the driveway, and, while he was so proceeding, he was struck by the car of the appellants. It is plain that his failure to proceed in accordance with the direction of the statute materially contributed to the accident and bars a recovery. The disregard of the statutory requirement was in itself negligence.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.