Argued April 1; affirmed May 12; rehearing denied July 14, 1936

# LANDIS *v.* WICK

(57 P. (2d) 759, 59 P. (2d) 403)

*Robert F. Maguire,* of Portland (Maguire, Shields & Morrison and Donald K. Grant, all of Portland, on the brief), for appellant.

*Francis E. Marsh,* of McMinnville (Vinton, Marsh & Marsh and Lawrence Osterman, all of McMinnville, on the brief), for respondent.

ROSSMAN, J.   December 17, 1934, at about 5:40 p. m., the plaintiff, while proceeding southerly upon his bicycle on the West Side Pacific highway near White-

son, was struck and injured by the defendant's automobile which was going in the same direction. The principal contention presented by the defendant (appellant) is based upon an order of the circuit court which denied his motion for a directed verdict. The motion was predicated upon a contention that the plaintiff was guilty of negligence because his bicycle was not equipped with a light and a reflector as required by 1931 Session Laws, chap. 360, § 58(f), and that this negligence contributed to his injury. Four additional contentions are: (1) Since the plaintiff admitted that his bicycle did not have the lighting equipment required by our statute, the burden rested upon him to prove that this negligence was not the proximate cause of his injury; (2) the court erred in failing to withdraw from the jury's consideration the complaint's charge that the defendant drove his automobile into collision with the plaintiff, although he had observed the plaintiff in time to have avoided striking him; (3) the court erred in excluding evidence which tended to show the visibility at the time and place of the accident; and (4) the court failed to properly instruct the jury.

The scene of the accident was on a straight level stretch of concrete pavement a half mile long, sixteen feet wide, and provided with broad shoulders. The defendant estimated his speed to have been between 40 and 45 miles per hour. Coming from the south at the moment of the collision was a car driven by one E. S. Talbot. Its lights were tilted downward. Talbot saw the plaintiff when he was 300 or 400 feet from him and also saw the defendant's car to the rear of the plaintiff. Defendant's car was less than four months old, and its lights, which were burning, were also tilted to the pavement. One A. H. Freisen occupied the front seat with the defendant. About 150 feet behind the Talbot car

was a car driven by one C. V. Graves, with lights burning. The defendant testified that he was looking straight ahead and while wondering whether the Graves car intended to overtake the Talbot car, the following, according to him, occurred: "Pretty soon I saw something going up and down, just like that (indicating) in front of me, and just then Mr. Freisen—'Oh!' he says, and I stepped on the brake and I saw there was a man there, and I whirled to the left and took a chance that I would get across and just as soon as I got part way across I let go the brakes again to get out of the way of the coming car, and I ran into a little bit of ditch." In this way the defendant's car struck the plaintiff and inflicted the injuries for which the latter seeks redress.

The plaintiff testified that he was riding his bicycle within six or eight inches of the right-hand edge of the pavement. He wore blue overalls, rubber boots, a black raincoat and a black hat. According to the plaintiff's witnesses, the pavement was white. The plaintiff admitted that his bicycle had neither a lamp on the front nor a reflector on the rear. 1931 Session Laws, chap. 360, § 58(f), requires that bicycles shall be equipped with a lamp on the front visible, under normal atmospheric conditions, from a distance of at least 300 feet, and "shall also be equipped with a reflex mirror or lamp on the rear exhibiting a red light visible under like conditions from a distance of at least 200 feet to the rear". Section 58 of the same statute provides that every vehicle during the period of a half hour after sunset to a half hour before sunrise shall illuminate its lighting equipment. December 17, 1934, the sun set at 4:27 p. m. According to the complaint, the accident happened "at about the hour of 5:45 o'clock p. m." The plaintiff testified that it happened between 5:30 and 5:40 p. m. He described the atmospheric conditions

thus: "It wasn't day light and it wasn't dark. The sun had gone down, but the rays of the sun was still in the sky. It was twilight." To the inquiry of how far he could observe objects, he replied: "I would say 80 rod." And added that when the Talbot car was 400 feet ahead of him he looked beyond the rays of its headlights and saw the two occupants in its front seat. Talbot described the atmospheric conditions thus: "It wasn't really dark, nor it wasn't real light. It was just at twilight. It was a light evening, and dry." Mrs. Talbot, who was riding in the car with her husband, testified that on December 17th no rain had fallen and that the day was not cloudy. She swore: "It wasn't dark or night; it was early in the evening." She was asked whether there was any light in the sky, and replied: "Yes, there was. It was the sky shine with a light reflection from the sky. It wasn't real—sort of a twilight." A Mr. Robbins, who was a highschool teacher at Amity, arrived at the scene of the accident a few moments after it had occurred and described the atmospheric conditions thus: "It was twilight I would say. It wasn't dark, it wasn't light. The sun had gone down—the sky was clear and it was quite light in the west especially, but there at the time, I would say, at twilight." At a distance of 200 feet from it he saw lying upon the road an object which was the plaintiff's body. One Hobaugh, who operated a small farm near Whiteson, gave the following description of the weather conditions: "Up until about five o'clock she was clear; up until six o'clock, I mean; and after six o'clock, why, the moon was up. I done all my chores without a lantern." The foregoing were plaintiff's witnesses. Defendant's witnesses were C. V. Graves, the driver of the car which was following the Talbot car, H. S. Farley, who was riding with Graves, A. H. Friesen, who

sat in the front seat with the defendant, and Mrs. N. B. Crider, who rode in the rear seat of defendant's car. They testified that at the time of the accident it was dark, and that one could not see without lights. Defendant admitted that the pavement was dry.

The plaintiff contends that the testimony of himself and of his witnesses justifies a finding that at the time his misfortune occurred it was sufficiently light that the defendant could have seen him in time to have avoided striking him, and that, that being true, a further finding is authorized that the absence of a reflector upon the rear of the bicycle was not a concurring cause of the collision. The defendant contends that the evidence indicates the absence of a reflector was a concurring cause of the collision.

■ The principles of law applicable to defendant's first assignment of error seem to be simple and well established. Both sides agree that the Last Clear Chance Doctrine, as employed in this state (*Dorfman v. Portland Electric Power Co.*, 132 Or. 648 (286 P. 991)) is not applicable to this action. If plaintiff's negligence was merely a contemporaneous condition, it will not defeat a recovery. For plaintiff's negligence to have such an effect, it is not essential that it should have been the cause of the injury. If it contributed thereto, that will suffice. It is enough if his injury might have been avoided had he equipped his bicycle with a reflector. If the injury was the natural and probable consequence of the neglect, the needed relationship is established. Both negligence by the plaintiff and its necessary relationship to the injury must be shown. If the accident would have happened whether the reflector was in place or not, its absence was not a concurring cause of the plaintiff's injury. The statute, obviously, does not contemplate that reflectors shall be the sole

warning to motorists of the presence of bicycles upon the highway. Nor does the statute intend that motorists shall look solely for reflectors, oblivious, in the meantime, of all other indications of the presence of bicyclists. The reflectors are intended to supplement whatever other warnings there may be. For instance, the bicycle itself may be visible whether protected by a reflector or not. Its movement or accompanying noises may be sufficient to apprise on-coming motorists of its presence. Or it may be that street lights or automobile headlights point out its presence upon the highway. If the presence of a bicycle is indicated in the above or in any other manner in time to give an observant motorist a reasonable opportunity to avoid striking it, but if his attention is diverted and he runs down the bicyclist, then it cannot be said that the resulting injury was due to the absence of a reflector. However, both parties have cited and reviewed in their briefs many authorities. We shall now take note of them, reviewing first those cited by the appellant (defendant).

In *Benson v. Anderson,* 129 Wash. 19 (223 P. 1063), the plaintiff was walking across a bridge, 1,500 feet in length, pushing an unlighted bicycle. He was walking on the wrong side. Defendant's automobile, traveling in the same direction, struck him. The accident happened at night, but, according to the decision, "the bridge was fairly well lighted with artificial lights so that an object of the size of a man could be seen for a considerable distance ahead, and it was a just inference for the jury to draw that had the appellant exercised the usual and ordinary vigilance he could have discovered the presence of the respondent in his path in time to avoid him". The court held that the plaintiff's presence upon the wrong side of the roadway was "negligent in itself" and that he could not, therefore,

"recover for the injury he suffered while so violating the statute in the absence of proof showing that his act did not contribute to his injury". Finding that there was no proof, the court concluded that his negligence was a contributing cause of his injury. It reversed the judgment of the superior court.

In *Riley v. Guthrie*, 218 Iowa 422 (255 N. W. 502), the plaintiff had parked his truck at night at a prohibited place on a city street, and, in violation of a statute, had failed to display lights upon the truck. However, according to the decision, the place where the truck was parked was "well lighted". The defendant, while intoxicated, failed to observe the truck until he was eight or ten feet from it and drove his vehicle into collision with it. He admitted his negligence. In reversing a judgment in favor of the plaintiff, the court on appeal stated: "Had the appellant (defendant) been operating his truck with reasonable care by maintaining a careful lookout ahead he could, undoubtedly, easily have avoided the collision. The absence of lights upon the rear of the parked truck obviously did not prevent appellee's truck from being seen for a considerable distance. The jury could have found that the street and intersection were well lighted." By applying the test of *sine qua non*, the court arrived at the conclusion that the plaintiff's acts in parking the truck in violation of the ordinance, and in failing to light it, were not only negligence but also contributed to the injury for which plaintiff sought redress. *Wall v. Cotton*, 22 Ala. App. 343 (115 So. 690), is the principal authority upon which the Iowa court relied in deciding *Riley v. Guthrie*, supra. The defendant was driving his truck at night, without lights, along a main highway 20 feet in width. While so proceeding, he struck the plaintiff's car which was parked upon the highway and which also was not

illuminated. Thus, both parties were violating the motor vehicle statute. Apparently, the night was dark and there was not artificial illumination. In affirming a decision in favor of the defendant, the court, referring to both parties, stated: "They stand before the court *'in pari delicti.'* "

In *U-Drive-It Car Co. v. Texas Pipe Line Co., Inc.,* 14 La. App. 524 (129 So. 565), the plaintiff's car, while in possession of a lessee, collided with defendant's truck which was parked at night without lights. Apparently, it had no right to be where it was. Since the plaintiff's car was in possession of a lessee, the court held that the latter's negligence could not be imputed to the plaintiff. It then held that the negligence of the defendant was a proximate cause of the plaintiff's injury and that the defendant was liable even though plaintiff's lessee's negligence was also a concurring cause. The defendant had presented evidence that, by virtue of the street lights, its truck could be seen for nearly 200 feet. In disposing of the contention based thereon, the court said: "It suffices to say that the defendant was negligent in parking the truck on a paved street in the city of Shreveport without lights, in violation of a city ordinance, and whether that negligence alone caused the accident or only contributed towards the accident is immaterial."

In *Anderson v. Southern Kansas Stage Lines Co.,* 141 Kan. 796 (44 P. (2d) 234), the plaintiff's truck and trailer were moving along the highway in the darkness of the night at a rate of five miles per hour. The jury's special findings were that the truck and trailer displayed neither tail-lights nor marker lights, as required by the statute. The defendant's stage crashed into the trailer. The decision mentions no artificial illumination except the blinding lights of a car approaching

from the opposite direction. In reversing a judgment in favor of the plaintiff, the court said: ''The omission of the lights was charged and proven to the satisfaction of the jury and should have been held to be contributory negligence which bars a recovery by the plaintiff and should have been so held in the present case.''

In *Turner v. Good,* 167 Wash. 27 (8 P. (2d) 414), the plaintiff alighted from an automobile in the darkness of the night at a place 57 feet beyond his home. While walking back on the wrong side of the street he was struck by the defendant's car. He claimed that defendant's car was being operated without lights. Substantial evidence indicated the contrary. In reversing a judgment for the plaintiff, the court declared: ''If, however, it be assumed that the question of the presence or absence of burning headlights was one for the jury, the result would be the same.'' It quoted from a section of the Washington statutes which directed that pedestrians at night time must walk upon the left-hand side of roadways, and held that it was ''plain that his failure to proceed in accordance with the direction of the statute materially contributed to the accident''.

In *Littlejohn v. Staggers,* 23 Ala. App. 322 (125 So. 61), the complaint charged that while the defendant's truck was standing at night without lights it was struck by the plaintiff's car. In reversing a judgment for the plaintiff, the court held that the defendant's demurrer should have been sustained because the complaint failed to allege that the truck was parked upon the highway. After having so held, the court next approved, obviously unnecessarily, a ruling made by the lower court which struck from the defendant's answer averments that the parked truck was standing in the moonlight, and that the rays of the plaintiff's headlights were

shining upon it. It said: "These pleas were not in answer to the complaint and the trial judge did not abuse his discretion in striking them out at the instance of the plaintiff." This it did, notwithstanding the fact that an Alabama statute provided: "The lamps on such vehicle need not be lighted when the vehicle is standing under the rays of a light and can be plainly seen."

In *Martin v. Herzog,* 228 N. Y. 164 (126 N. E. 814), the plaintiff and her husband while driving upon a highway in a buggy which displayed no lights were struck by the defendant's automobile which, in rounding a curve to the left, departed slightly from the right-hand side of the highway. There was no evidence that the defendant's car was moving at an excessive speed or was not properly equipped. The court pointed out that as the defendant's car was moving around the curve to the left, its headlights, being directed straight ahead, threw no light to the left from whence the unlighted buggy was coming. The appellate division reversed a judgment in favor of the plaintiff because the trial judge had instructed the jury that it was not bound to find that the plaintiff's failure to display lights was negligence in itself. In affirming the reversal, the court of appeals, in a decision written by Mr. Justice Cardoza, said:

"We must be on our guard, however, against confusing the question of negligence with that of the casual connection between the negligence and the injury. A defendant who travels without lights is not to pay damages for his fault, unless the absence of lights is the cause of the disaster. A plaintiff who travels without them is not to forfeit the right to damages, unless the absence of lights is at least a contributing cause of the disaster. To say that conduct is negligence is not to say that it is always contributory negligence. 'Proof of

negligence in the air, so to speak, will not do.' Pollock Torts (10th Ed.) p. 472. We think, however, that evidence of a collision occurring more than an hour after sundown between a car and an unseen buggy, proceeding without lights, is evidence from which a casual connection may be inferred between the collision and the lack of signals. * * * There may, indeed, be times when the lights on a highway are so many and so bright that lights on a wagon are superfluous. If that is so, it is for the offender to go forward with the evidence, and prove the illumination as a kind of substituted performance. The plaintiff asserts that she did so here. She says that the scene of the accident was illuminated by moonlight, by an electric lamp, and by the lights of the approaching car. Her position is that, if the defendant did not see the buggy thus illuminated, a jury might reasonably infer that he would not have seen it anyhow. We may doubt whether there is any evidence of illumination sufficient to sustain the jury in drawing such an inference; but the decision of the case does not make it necessary to resolve the doubt, and so we leave it open. It is certain that they were not required to find that lights on the wagon were superfluous. They might reasonably have found the contrary. They ought, therefore, to have been informed what effect they were free to give, in that event, to the violation of the statute. They should have been told, not only that the omission of the light was negligence, but that it was 'prima facie evidence of contributory negligence'; i.e., that it was sufficient in itself unless its probative force was overcome. * * *

"Here, on the undisputed facts, lack of vision, whether excusable or not, was the cause of the disaster. The defendant may have been negligent in swerving from the center of the road; but he did not run into the buggy purposely, nor was he driving while intoxicated, nor was he going at such a reckless speed that warning would of necessity have been futile. Nothing of the kind is shown. The collision was due to his failure to see at a time when sight should have been aroused and guided by the statutory warnings. Some explanation of the effect to be given to the absence of those warnings,

if the plaintiff failed to prove that other lights on the car or the highway took their place as equivalents, should have been put before the jury.''

We come now to a consideration of the authorities upon which the plaintiff relies: In *Beckstein v. Sayler,* 93 Ind. App. 686 (179 N. E. 581), the decedent, while riding upon a bicycle at night, was struck by the defendant's automobile. A statute required bicycles to be equipped with red reflectors having a surface of at least sixteen square inches. The bicycle carried none. In holding that the lower court had not erred in denying defendant's motion for a directed verdict, the court said:

''Before such negligence will defeat a recovery it must be shown to be the proximate cause of the injury complained of or that it proximately contributed thereto. * * * The defendant himself testified that his dimmers, which he had on at the time of the accident, enabled him to see only approximately 15 to 20 feet in front of his car and that he saw the decedent and his bicycle first at a distance of 8 or 10 feet in front of him. * * * Even if there had been a reflector of the size required by law on the rear of the bicycle it would not have shown until the lights of the automobile were cast upon it.''

The court then referred to evidence which showed that skid marks left by the automobile extended for a distance of 45 to 50 feet, thus indicating that even if the bicycle had carried a reflector the defendant's dim lights might not have prevented the collision.

In *Hart v. Farris,* 218 Cal. 69 (21 P. (2d) 432), the plaintiff while riding a bicycle at night on a city street of San Diego was struck by the defendant's automobile. In violation of a staute, the bicycle carried no light. We quote from the decision:

''A violation of the provisions of the statute by plaintiff would not bar her from recovery on the ground

of contributory negligence unless such violation of law proximately contributed to the accident. * * * Presumably the jury concluded that in view of the lack of attention of the driver of the automobile to the road ahead and the good light which the headlights of the automobile reflected ahead for a distance of 300 feet, the absence of lights on the bicycle was not a contributing factor in the accident. Such was the view of the trial court as expressed in denying appellants' motion for a new trial. Such a conclusion had ample support in the evidence.''

In *Tendoy v. West,* 51 Idaho 679 (9 P. (2d) 1026), the defendant's automobile, in the darkness of the night, ran into the rear of plaintiff's buggy which, in violation of the traffic laws, had no tail-light. In holding that the trial court erred in directing a verdict for the defendant, the decision states:

''When urged as a defense the burden of establishing contributory negligence as the proximate cause never leaves the defendant, unless plaintiff, before resting has relieved him by establishing it or supplying facts clearly presumptive of it. In the absence of some probable causal connection, bald negligence per se can raise no presumption of proximate cause: it may be wholly innocent. It is no more effective than any other kind of negligence. Where on the question of proximate cause, men's minds may honestly differ it should always be submitted to the jury.''

The court then pointed out that the defendant's bright lights played upon the buggy for about a quarter of a mile before defendant's car crashed into it. Referring to the defendant, the court said:

''Either he had been paying no attention along the road, was blinded by the approaching car or wholly unable to detect the buggy solely because of the absence of a taillight.''

It held that the issue whether the plaintiff's negligence contributed to his injury was an issue for the jury.

In *La Count v. Pasarich,* 205 Cal. 181 (270 P. 210), the defendant's delivery truck ran into the plaintiff's bicycle upon a street of the city of Eureka while the bicycle was without the light required by statute. However, the plaintiff carried a flashlight. According to the decision, the street was ''so flooded with the light of a street lamp as to render the presence of the plaintiff so far visible to the approaching driver of the truck as to render the presence or absence upon the plaintiff's bicycle of the lamp or light required by the motor vehicle act probably inconsequential''. It was held that under the circumstances the issue whether the plaintiff's negligence was a contributing cause of his injury was an issue which had been properly submitted to the jury.

In *Greeneich v. Knoll,* 73 Cal. App. 1 (238 P. 163), the decedent, on a dark, rainy night, was riding his bicycle without a reflex mirror and was struck by the defendant's truck which carried only dash lights. In holding that the lower court did not err in submitting to the jury for its determination the issue whether the decedent's negligence was a contributing cause of the accident, the court said:

''Granting that the reflection of the light from the motor truck upon a reflex mirror could be seen at a greater distance ahead than a person or other object on the road, it cannot be held that the jurors were not warranted, in view of the dim lights on the truck, in drawing the inference that such reflected light would not have been visible to the driver of the truck in time to avoid the acident. If it would not have been so visible, then the absence of a reflex mirror was not a contributing cause of the accident.''

See also *Gleason v. Lowe,* 232 Mich. 300 (205 N. W. 199), where the court held that the question of plaintiff's alleged contributory negligence in failing to display a light upon his bicycle was one for the jury's determination.

*Topper v. Maple,* 181 Iowa 786 (165 N. W. 28), contains nothing which is helpful to our problem because the evidence rendered uncertain whether the hour had come which required the display of lights.

In *Hanser v. Youngs,* 212 Mich. 508 (180 N. W. 409), the plaintiff was engaged in a joint enterprise to such an extent with the driver of the truck in which he was riding, and which carried his freight, that the negligence of the driver was imputable to him. Due to a mishap the truck was parked alongside of a highway. It displayed no tail-light. The plaintiff was standing nearby and was warning traffic when he was struck by the defendant's car. The spot was well illuminated by an arc light. In holding that the negligence imputable to the plaintiff was not necessarily a concurring cause of his injury, thereby defeating his recovery, the court declared:

"There must be some causal connection between the accident and the want of a taillight in order to make the negligence contributory. * * * It was a question for the jury, we think, as to the amount of light at the place of the accident. Obviously, if the truck was standing under the bright rays of an arc light, we cannot say as a matter of law that the absence of the taillight was a contributing cause of the injury. The trial court was not in error in submitting the question of plaintiff's contributory negligence to the jury."

In *Arvo v. Delta Hardware Co.,* 231 Mich. 488 (204 N. W. 134), plaintiff's decedent was traveling on a city street at night in a wagon which, in violation of the

regulations, displayed no tail-light. In affirming a judgment for the plaintiff, the court said:

"The night was dark and rainy. Whether a light on the left side of the wagon would have been visible to Frasher after the deceased turned to the left to cross the street, was, we think, a question for the jury."

In *Martin v. Oregon Stages, Inc.*, 129 Or. 435 (277 P. 291), the plaintiff's truck was standing partially upon the highway. In violation of a statute which required trucks to display white lights near their left rear corners, plaintiff's truck had none, but carried a red light. The defendant stage ran into it, but the driver of the stage had seen the truck in time to have avoided striking it. This court held that the issue whether a violation of the statute was a contributing cause of the plaintiff's injury was an issue for the jury.

Reverting to the decisions cited by the defendant, we fail to understand how the court, in *Riley v. Guthrie,* supra, was justified in holding that the failure of the plaintiff to display a light upon his parked truck constituted conclusive guilt of contributory negligence. It will be recalled that the place was "well lighted", that the absence of the tail-light did not prevent the truck from being readily seen, and that the defendant was intoxicated. The court must have believed that the plaintiff's status was that of a trespasser or of one who was guilty of maintaining a nuisance. It must have believed that the only duty which the intoxicated driver owed was to refrain from wilfully inflicting an injury upon the plaintiff. Likewise, we cannot understand why, in *Benson v. Anderson,* supra, the fact that the bridge "was fairly well lighted with artificial lights" should not have caused the court to affirm the judgment in the plaintiff's favor which was, apparently, based upon a finding by the jury that the plaintiff was

not guilty of contributory negligence. Since "an object of the size of a man could be seen for a considerable distance ahead" it appears to us that the situation differed only in degree from striking a pedestrian in the daytime. Here, too, the court must have believed that the injured individual was a trespasser, and that the only duty owing to him was that of refraining from wilfully injuring him. The same observation is applicable to *Turner v. Good,* supra. In the pioneering case of *Butterfield v. Forrester,* 11 East 60, Lord Ellenborough stated:

"In cases of persons riding upon what is considered to be the wrong side of the road, that would not authorize another purposely to ride up against them."

We do not believe that any less care is due today. Possibly, in these decisions the courts confused negligence with proximate or contributing cause—an error which we are told is frequently made: Green, Proximate Cause, p. 76. With the observations by Mr. Justice Cardoza in *Martin v. Herzog,* supra, we are in entire accord, except his statement concerning burden of proof, to which we shall revert later.

■ We do not believe that the plaintiff's status was that of a trespasser as he proceeded along the common highway, nor do we believe that by his omission to display the required reflector he had converted himself into a nuisance. He had a right to be where he was. His rights were not less than those of a motorist who is proceeding along the highway in violation of some section of our motor vehicle act, for instance, a motorist who fails to display a tail-light or who illuminates only one of his headlights. We know of no section of our laws which protects such individuals only from wilfull injury inflicted by others. A motorist or a bicyclist,

who violates some section of our motor vehicle law, does not thereby forfeit his civil rights. His disregard of the law affects his rights against another only if it contributed to his injury. In expressing this belief, we do not mean to minimize the gravity of the offense of a bicyclist who fails to display the required lights.

■ According to substantial evidence, darkness had not yet set in. A glow was in the sky and twilight prevailed. The plaintiff and others said that they experienced no difficulty in seeing objects considerable distances away. It is true that the plaintiff wore dark clothes, but somewhat neutralizing this fact is the circumstance that the pavement was white. The highway was straight and level. There were no embankments to the side to obscure the plaintiff's figure and render it difficult of discernment. And there were three sets of headlights shining upon the road where he was riding. Manifestly, the purpose of a reflector is not to automatically stop cars approaching from the rear, but to signal such cars. If the driver of the approaching car is not looking in the direction of the bicycle he will fail to see the signal. The record contains positive testimony that those who looked in the direction of the bicycle saw it clearly. From this it is proper to infer that the defendant was not looking ahead, although he was approaching the plaintiff at a high rate of speed. The above and other circumstances convince us that the issue whether the plaintiff's neglect contributed to his injury was for the jury's determination. Hence, we find no error revealed by this contention.

■ We shall now consider the defendant's second assignment of error, which submits that the trial judge erred when he instructed the jury that the burden of proving plaintiff's admitted neglect was a contributing factor of his injury rested upon the defendant. The

defendant relies upon *Martin v. Herzog,* supra, *Benson v. Anderson,* supra, and 9 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), p. 446, § 6130. We have already quoted the portion of *Martin v. Herzog* upon which the defendant relies. Blashfield, Cyclopedia of Automobile Law and Practice, cites only two decisions in support of its statement: *Martin v. Herzog,* supra, and *Moore v. Hart,* 171 Ky. 725 (188 S. W. 861). In the latter, the court was concerned with the defendant's negligence when it declared:

"When the plaintiff shows that the rate of speed at which the defendant was traveling was greater than that prescribed by the statute for that place, the burden then shifts to the defendant to show that the speed at which he was traveling did not produce the injury."

The statement in *Martin v. Herzog,* supra, requiring the plaintiff to assume the burden of showing that the absence of light upon the buggy did not contribute to his injury is in harmony with the New York practice which casts upon the plaintiff the burden of establishing his freedom of negligence: Shearman and Redfield on Negligence (6th Ed.), § 107, and 45 C. J., Negligence, p. 1182, § 759. The portion of the decision in *Benson v Anderson,* supra, upon which the defendant relies, states: "One injured while in the act of disobedience of them (traffic laws) should be compelled to show with clearness that his act in no way contributed to his injury." We do not believe that by the use of this language the court meant to depart from its uniform practice (45 C. J., Negligence, p. 1171, § 755) and place upon the plaintiff the duty of disproving contributory negligence. Very likely the court was speaking of the burden of coming forward with proof as distinguished from the burden of ultimately producing conviction. For a well-reasoned decision holding that the burden

of proving negligence on the part of the plaintiff as a contributing factor of his injury never leaves the defendant, unless it is admitted by the plaintiff, see *Tendoy v. West,* supra. We deem it unnecessary once more to set forth a list of the many decisions of this court holding that the burden is upon the defendant, not only to prove his charges of negligence against the plaintiff, unless the latter admits that he was negligent, but also to prove that this negligence was a contributing cause of plaintiff's injury. But see especially: *Ford v. Umatilla County,* 15 Or. 313 (16 P. 33). Section 9-1001, Oregon Code 1930, provides: "The party having the affirmative of the issue shall produce the evidence to prove it."

■ The third assignment of error, as already indicated, is based upon a contention that the trial court should have withdrawn the complaint's sixth specification of negligence which is:

"At said time and place, said defendant saw, or by exercise of reasonable and due care, should and would have seen, said plaintiff * * * in plenty of time to avoid said collision, * * * Defendant carelessly, recklessly and negligently operated and drove his said automobile into and against said bicycle."

It is our belief that the evidence justified the trial judge in the course he pursued. The instructions which he based upon this issue are not challenged. This contention reveals no merit.

In his fourth assignment of error the defendant attacks three rulings which the trial judge made during the reception of the evidence. The first ruling sustained plaintiff's objection to the question propounded to defendant's witness Friesen: "Will you state whether or not it is difficult to see or discern a man or a person on a bicycle unless they are carrying a light or

have a light?" The objection submitted that the information sought was "incompetent, irrelevant and immaterial". During the colloquy which ensued the trial judge stated: "I don't think it is a subject for expert testimony." Defendant's counsel acquiesced in this observation by replying: "I don't think it is either, expert testimony. I think anyone who is experienced with driving—there isn't everyone of the jury who drives. If there were, I wouldn't ask the question." The second challenged ruling was made after defendant's counsel had asked the defendant the following question: "If there had been a reflector on the back of that automobile or that bicycle, which gave a red—reflected a red light toward you, could you and would you have seen it in time to avoid that accident?" The witness replied: "I surely would. I surely would." Plaintiff moved to strike the answer on the ground, "It is incompetent, irrelevant and immaterial", and the motion was sustained. The third attacked ruling sustained the plaintiff's objection to the following question propounded to the defendant: "If it had not been for the lights of the approaching cars or car, or cars, you believe that you could have seen Mr. Landis in time to have avoided the accident, even though his bicycle had no reflector or red light?" Again, the objection was that the inquiry related to a subject "incompetent, irrelevant and immaterial". The offer of proof was: "He believed he would have been able to see the plaintiff in time to have avoided colliding with him." Defendant was over 60 years of age and had driven cars for about 17 years. Later, defendant's counsel, without objection, asked him: "I would like to have you state to the jury how the lights of that approaching car or cars—what effect it had upon you, and what effect, if any, they had upon your ability

to see objects in the road, such as unlighted bicycles.'' to which he replied, ''Well, it affects your sight when you look at the light, and then you look into the dark. You can never penetrate the dark as good as you can when there is no lights to look at ahead of you. The lights show—'' Here plaintiff's counsel interrupted by stating: ''He was asked how it affected him.'' Whereupon the defendant interrupted by stating: ''It did affect me.'' Next, he was asked: ''Tell how it affected you.'' and replied, ''Well, when that light strikes me, I can't see as far as I can when that light isn't there; and then when I look in the dark again, my eyes couldn't see as good as I could without that light. Anybody that drives a car knows that that light—''

It will be observed that the fourth question embraced substantially all of the elements of the three preceding questions. No objection was made to it, and the defendant thereupon made a comprehensive explanation, being assisted, in a measure, by the plaintiff's interrupting question. However, the four questions differed in form. The first three required answers of ''yes'' or ''no''; and the first differed from the other three by being directed to Friesen. The first omitted mention of the lights of the two cars approaching from the opposite direction, and the third, in a measure, sought to attach blame to those lights. The fourth question, which the witness was permitted to answer, covered the entire subject.

It will be observed that when plaintiff's objections to these questions were pending before the trial judge that the defendant's counsel acquiesced in an observation made by the trial judge that the subject matter of inquiry was not within the province of expert testimony. The rule applicable to layman-opinion evidence, as is well illustrated by the decisions, is flexible (Wig-

more on Evidence (2d Ed.), § 1926); and the judicial officer best qualified to apply the rule's flexible character is the trial judge who observes the ability of the lay witnesses to express themselves without resort to opinions. When a well-worded question which did not call for the expression of an opinion was finally put to the defendant, he gave an intelligent explanation of the difficulty of seeing an unlighted bicycle ahead in the face of approaching automobile lights. Thus, the questions could be answered without resort to layman-opinion evidence. We, therefore, conclude that no error is revealed by these rulings.

■ The fifth and final assignment of error is predicated upon three instructions to the jury which the defendant requested, but which were not given. They are based upon the doctrine of the Last Clear Chance. Plaintiff throughout has declared that he was not relying upon that rule. And in our disposition of the previous assignments of error we have ignored that rule. The instructions to the jury, which were comprehensive, stated clearly that the plaintiff's violation of the lighting provision of our motor vehicle act was negligence, and submitted to it the issue whether that negligence contributed to the plaintiff's injury. For these reasons, as well as others, no error is revealed, we believe, by this assignment.

It follows that the judgment of the circuit court is affirmed.

CAMPBELL, C. J., and KELLY and BELT, JJ., concur.

---

Petition for rehearing denied July 14, 1936

ON PETITION FOR REHEARING
(59 P. (2d) 403)

ROSSMAN, J. The petition for a rehearing and the comprehensive brief accompanying it challenge the

propriety of our previous decision in its entirety. They, however, offer no serious criticism of our narrative of the facts.

■ The appellant (petitioner) argues again that the plaintiff's infraction of 1931 Session Laws, chapter 360, p. 654, § 58(f), by his failure to have upon the rear of his bicycle at the time of the collision a reflector or a red lamp, was not only negligence but that the law of contributory negligence demands a conclusion that the omission was a contributing cause of the plaintiff's injury, thus entitling the defendant to a directed verdict. Appellant's brief states:

"The law declares (1) that he who operates a bicycle after a certain hour without a red rear light or reflector is in danger of being hit from the rear by an overtaking vehicle; that the lack of such a light creates a hazard; (2) to avert such collision the law requires the bicycle to display a rear light or reflector giving warning for a distance of 200 feet.

3. The plaintiff displayed no such warning, light or reflector.

4. In so doing he was negligent.

5. He was hit from the rear.

6. The danger sought to be averted occurred.

This constitutes contributory negligence as a matter of law, from the consequence of which plaintiff can only escape by pleading and proving that the defendant actually saw him in time to have avoided hitting him, and this is the same rule which you adopted in all your previous cases: Plinkiewisch v. Portland Ry., Light & Power Co., supra. Stewart v. Portland Ry., Light & Power Co., supra. Dorfman v. P. E. P. Co. Morser v. Southern Pacific, supra. Emmons v. Southern Pacific supra, and a dozen others and is the general law of the land."

The appellant evidently believes that in all instances where these six elements are present all rea-

sonable men draw the conclusion that the automobile struck the bicycle because the latter carried neither light nor reflector. We believe, however, that many reasonable men believe that the absence of the light upon the bicycle under such circumstances is not of necessity the cause of the collision. We all know that many rear-end collisions occur upon both the highway and the railway tracks in broad daylight. We know that not infrequently an automobile collides with the side of a train, or other stationary object, in the daytime. The absence of a lookout ahead sometimes accounts for these accidents. Fog in the daytime or a blinding light at night may conceal the object ahead. The absence from the appellant's compilation of the seventh element necessary to support his conclusion— that the absence of the light upon the bicycle was the cause of the collision—is significant. In our previous opinion we reviewed several decisions which hold that when substitute lights are present which clearly render the bicyclist visible his failure to carry a reflector or a light is not necessarily the cause of his injury when struck from the rear by an overtaking car: To these decisions, we add the following review. In each instance the decision from which we shall now quote, in our opinion, supports our previous conclusion. From *Osbun v. De Young,* 99 N. J. L. 204 (122 Atl. 809), we quote:

"It is further insisted for appellant that the court erred in refusing to charge the following request: 'That if the jury believes that there was no tail light on the Martin truck at the time of the accident, or if there was a tail light such as Martin described, that Osbun and Hart obscured it from the view of Welsh, then the plaintiffs were guilty of contributory negligence and they cannot recover.' This request is manifestly unsound as a legal proposition, in that it erroneously as-

sumes that in the absence of a tail light on the truck, or its obscuration by Osbun and Hart, the plaintiff is debarred of a recovery, regardless of the fact whether or not either of the circumstances alluded to was the result of negligence and a proximate contributing factor to the defendant's negligence that caused the plaintiff's injury. For it is firmly settled that it is only where the plaintiff's act is a negligent one and proximately contributes to the defendant's negligence that caused plaintiff's injury that the latter is debarred of a recovery.''

From *Simpson v. Miller,* 97 Mont. 328 (34 P. (2d) 528), we quote:

''Every motor vehicle operated ·or driven on the highways, must 'between one hour after sunset and one hour before sunrise * * * display two white lights in front', etc. Section 1753, Rev. Codes 1921. A violation of the statute constitutes negligence, but, in considering whether or not such negligence contributed to the accident or barred recovery, we must take into consideration the conditions existing at the time and place of the accident. Knott v. Pepper, 74 Mont. 236, 239 P. 1037. The mere fact that a vehicle is on the road without lights, contrary to the requirements of the law, does not excuse the driver of another vehicle from the effect of running into it if the road is so lighted that it was clearly visible and he could have avoided the collision by the exercise of ordinary care; whether or not these facts exist is a question for the jury. Decou v. Dexheimer (N.J.Sup.) 73 A. 49. Herein, instructed that the plaintiff was negligent and that they should find for the defendant if they found from a preponderance of the evidence that such negligence contributed to his injury, the jury found for the plaintiff, and there is substantial evidence in the record that the Myhre car was plainly visible from a much greater distance than the corner from which the defendant saw it; it was practically under a street light. * * * The evidence, therefore, warrants the im-

plied finding that the fact that the car was not carrying headlights did not contribute to the injury, and that the plaintiff was not guilty of contributory negligence in failing to drive the car off of the street or to himself leave the car in order to avoid injury. As well might a pedestrian be presumed to expect that a motorist would suddenly drive his car across the curb and onto the sidewalk and consequently be held guilty of contributory negligence in failing to avoid being struck by entering an adjacent building.''

From *Anderson v. Sterrit,* 95 Kan. 483 (148 P. 635), we quote:

"The plaintiff had no license to ride his bicycle and carried no light, contrary to an ordinance of the city. The absence of a license was not a factor causing the collision, and the defendant testified that he saw the plaintiff when he was a long distance from the point of collision. Consequently neither violation of the city ordinance contributed to the plaintiff's injury.''

From *Surmeian v. Simons,* 42 R. I. 334 (107 Atl. 229), we quote:

"It appears that about ten o'clock on the night of August 14, 1917, the plaintiff was driving a two seated carriage upon Elmwood avenue in the town of Warwick; that he was proceeding toward the north and was upon the extreme easterly side of the traveled part of the road; that when he had reached a point near the intersection of Pawtuxet avenue with Elmwood avenue, about one third of a mile south of the bridge over which Elmwood avenue crosses the Pawtuxet river, his carriage was struck from behind without warning by an automobile operated by the defendant, who at that time was also proceeding northward on Elmwood avenue. As a result of this collision the carriage of the plaintiff was injured, his horse was caused to run away, and the plaintiff claims that he received personal injuries. * * * Said night was warm, the weather was fair but the moon was not shining. This

part of Elmwood avenue is in a suburban district and is lighted by incandescent electric lights. There is a conflict in the evidence as to the distance between said lights and as to the extent to which said lights illuminated the road on the night in question. The defendant claims that the plaintiff was guilty of contributory negligence in that at the time of the accident he was driving said carriage in violation of the provisions of Chapter 1028, Pub. Laws, 1914. Said chapter, among other things, provides as follows: 'Sec. 16. Every vehicle, when located or operated on any public highway or bridge shall display one or more lights on said vehicle so placed as to be visible both in the front and the rear, during the period from one hour after sunset to one hour before sunrise.' Whether or not the plaintiff just before the accident did display one or more lights on his carriage so placed as to be visible from the front and the rear was one of the disputed issues in the case. The testimony on this point was conflicting; the jury found specially that the plaintiff did not. * * * As a matter of law the finding that the plaintiff was acting in disregard of the statute is not conclusive upon the question of his right to recover. The purpose of the statutory provision is plain, viz., to apprise travelers, between the hours named, of the presence and location of vehicles upon public highways and bridges. In case of a collision during those hours between a traveler who is complying with the statute and a vehicle not displaying one or more lights, if such traveler is exercising reasonable care and the collision is due to ignorance on his part of the presence of said unlighted vehicle in the dark highway, then the absence of such light or lights may be considered as an efficient and immediate cause of the collision and the fact of the violation of the statute is evidence of negligence on the part of the driver of the unlighted vehicle. If however the collision between such traveler and the unlighted vehicle occurs in the nighttime upon a highway which is itself so well lighted that the unlighted vehicle can be plainly seen by other travelers

then the fact of the violation of the statute is immaterial in the consideration of the negligence of the respective parties, because the absence of lights upon the vehicle had no causal relation to the collision. Therefore the condition of the light in the highway in the neighborhood of the place of the accident in question became a material matter in the consideration of the case. According to the testimony of some of the witnesses who, as far as the record discloses, are disinterested said highway was so light that at the point in question the defendant if he had been exercising reasonable care could not have failed to see the carriage of the plaintiff in front of him in ample time to have avoided it. Witnesses for the defendant testified that at the time and place of the accident the highway was dark so that the carriage of the plaintiff could not be seen by the defendant until he was so close to it that the collision could not be prevented.''

The order of the trial court in setting aside the verdict for the defendant and granting a new trial was affirmed.

From *Denunzio v. Donahue*, 204 Ky. 705 (265 S. W. 299), we quote:

''According to the plaintiff's evidence, her lights had gone out as she came to town and her attention had been called to this by the traffic policeman who instructed her to proceed very slowly, not exceeding eight (8) miles per hour, in going through town. She says she observed the officer's directions and was traveling very slowly as she approached the intersection of Beechwood, over which hung a bright arc light. Passing under the light she crossed the intersection to the north side of Beechwood some twenty or thirty feet, when the car driven by Denunzio suddenly turned from the west side of the street towards the car in which she was riding on the right side of the street and ran into it, causing the injury of which she complains. * * * While appellee Donahue was guilty of negligence in driving her car without lights, the jury may have con-

cluded, as well they could, that the want of lights on the Donahue car did not in any way contribute to the accident. Miss Donahue was not guilty of contributory negligence as a matter of law if her statement of facts is true.''

See to the same effect *Bowers v. Carolina Public Service Corp.*, 148 S. C. 161 (145 S. E. 790), and *Nielson v. Walker*, 105 Cal. App. 23 (286 P. 1091).

From *Archer v. Gage*, 126 Or. 532 (270 P. 521), we quote:

''Defendants would not be liable in damages for failure to observe some requirement of the law in respect to lights unless such failure contributed to the injury.''

From *Plinkiewisch v. Portland Ry. L. & P. Co.*, 58 Or. 499 (115 P. 151), we quote:

''The fact, if it be a fact, that the car had no headlight, can have no bearing, as the testimony shows that the light was sufficient to enable a person nearly a block away to see both deceased and the car.''

In *Strong v. Ernst*, 169 Wash. 617 (14 P. (2d) 697), the plaintiff's car ignored a stop sign, and, passing on, collided with the defendant's car. The defendant contended that the plaintiff's infraction of this traffic regulation constituted contributory negligence barring his recovery. The court held that an issue still remained whether the plaintiff's infraction of the traffic regulation was a concurring cause of the accident.

In all of the above instances, as in the others mentioned in our previous decision, the courts hold that where substitute lights are present, whether natural or artificial, a conclusion is not inevitable that the plaintiff's failure to have displayed the statutory lights was a concurring cause of his injury. The fact that the plaintiff was plainly visible is deemed evidence that the

defendant was not looking ahead; and, if he was not looking ahead, the absence of a light upon the bicycle could not have been a concurring cause of the accident. We, therefore, abide by the conclusion expressed in our previous decision, that the court did not err when it denied the defendant's motion for a directed verdict.

It will be observed that the appellant argues, in the paragraph which we quoted from his brief, that our previous decision is at variance with *Plinkiewisch v. Portland Ry. L. & P. Co.*, supra; *Stewart v. Portland Ry. L. & P. Co.*, 58 Or. 377 (114 P. 936, 63 Am. & Eng. R. Cas. (N. S.) 794); *Dorfman v. Portland Electric Power Co.*, 132 Or. 648 (286 P. 991); *Morser v. Southern Pacific Co.*, 124 Or. 384 (262 P. 252); and *Emmons v. Southern Pacific Co.*, 97 Or. 263 (191 P. 333). In each of these decisions, this court, in defining the last clear chance doctrine, pointed out that as employed in this state the doctrine is applicable only to discovered peril; that is, the plaintiff must prove that the defendant knew of the plaintiff's helplessness. In some of the above decisions this court also pointed out that the doctrine is applicable only where the plaintiff's negligence is antecedent, and that if it is still continuing he can not recover. It is evident from these decisions that any plaintiff who desires to rely upon the last clear chance doctrine must present a situation wherein (1) his own negligence brought him into a place of peril; and (2) his own unwarranted conduct would be the proximate cause of his injury but for the fact that the doctrine, in relieving from the hardships of the contributory negligence rule, construes his negligence as remote and the failure of the defendant to embrace the clear chance of avoiding the collision as proximate. But, as will be observed from the decisions above reviewed, it may be that although the plaintiff was negli-

gent he was not contributing to his own injury. In that event he ought not to be required to admit a fiction and depend upon another fiction to bring him a recovery. He ought to have a right to a judicial investigation of the question whether his negligence was a contributing cause of his injury. As we have seen, a large number of courts have held that all six propositions advanced by the defendant in his above-quoted language may be present, and yet the absence of the light may not be the cause of the injury. Such, the plaintiff says, is the instant case. We see no conflict between the principles employed in the decision of this case and any previous decision of this court.

Appellant challenges our holding that the court committed no error in ruling upon the admissibility of the evidence. The questions are quoted in our previous decision. The defendant was given full opportunity to testify that he was looking ahead and maintaining a sharp lookout. His companion in the front seat was permitted similar freedom. *Simpson v. Miller*, supra, (at page 531), supports our conclusion.

The petition for a rehearing is denied.

CAMPBELL, C. J., and KELLY and BELT, JJ., concur.